### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

PATRICK MULLER, an individual, and
MOUNA BOUZID, an individual,

CASE NO.:

    *Plaintiffs,*

v.

ITEB ZAIBET a/k/a "Swagg Man", an
individual, LOLITA C. REBULARD, an
individual, LUXURY PROPERTIES INC., a
Delaware corporation, BEACH PROPERTIES
RENTAL, INC., a Delaware corporation,
LUXURY PROPERTIES TRUST u/a/d March
2, 2018, AAA PLUS FINANCIAL GROUP
INC., a Florida corporation, YVETTE
TENORD, an individual, JOHNNY PREVILUS,
an individual, RES INVESTMENT INTER,
INC., a Florida corporation, INFINITE RES
INVESTMENT, LLC, a Nevada limited liability
company, NEW MIAMI REALTY, CORP., a
Florida corporation, and GUZMAN305 TRUST,
a Florida trust,

    *Defendants.*

_____/

### <u>VERIFIED COMPLAINT</u>

Plaintiffs, Patrick Muller ("Muller") and Mouna Bouzid ("Bouzid") (collectively, the

Plaintiffs"), by and through the undersigned counsel, hereby sue Defendants, Iteb Zaibet a/k/a

"Swagg Man" ("Zaibet"),[1] Lolita C. Rebulard ("Rebulard"), Luxury Properties Inc. ("Luxury

Properties"), Beach Properties Rental, Inc. ("Beach Properties"), Luxury Properties Trust u/a/d

---

[1] The crimes and antics of "Swagg Man" and the stories of just some of his victims were recently
featured in an expose written by investigative reporter Marc Wortman for Rolling Stone Magazine
dated June 17, 2023.  *See* www.rollingstone.com/culture/culture-features/rapper-swagg-man-
accused-scamming-fans-what-happened-1234771874/

March 2, 2018 (the "Trust"), Guzman305 Trust ("Guzman Trust"), AAA Plus Financial Group, Inc. ("AAA"), Yvette Tenord ("Tenord"), Johnny Previlus ("Previlus"), Res Investment Inter ("Res Investment"), Infinite Res Investment, LLC ("Infinite Res"), and New Miami Realty, Corp. ("New Miami") (collectively, the "Defendants"), and state:

## INTRODUCTION

Plaintiffs bring this action for damages and equitable relief against Defendants, Zaibet, Rebulard, Luxury Properties, Beach Properties, the Trust, Guzman Trust, AAA, Tenord, Previlus, Res Investment, and Infinite Res for their unlawful actions perpetrated on Plaintiffs (and countless others) in furtherance of their international investment and real estate fraud, which scheme involved the solicitation of millions of dollars from unsuspecting victims, such as Plaintiffs here, for indirect investment in various real estate projects in South Florida.  However, contrary to the "sales pitches" being made by the Defendants, there were never any actual investments or real estate opportunities to be made; rather, Defendants formulated a whole scheme, whereby, at the direction of Defendant Zaibet, international investors were sold the opportunity to invest in their own little part of the American dream, which ironically turned out to be a nightmare.  Rather than investment the monies of its victims as promised, upon receipt of the wired funds, Defendants would immediately divert such monies to accounts held in the name of the Defendants for their personal use, to their related shell companies, or to make deposits for the purchase of other real estate not otherwise disclosed to the victims.  Sadly, before the victims of this massive fraud, including the Plaintiffs, were able to fully discover that they had fallen prey to a massive international fraud, with the assistance and/or acquiescence of Defendant New Miami, the Defendants were able to "flip" the unlawfully acquired assets and move the proceeds from such sales to the accounts of other bad actors, most commonly to accounts held by affiliates of the Defendants and often located outside of the United States.

## JURISDICTION, PARTIES, AND VENUE

1.      At all times relevant hereto, Plaintiff Muller is and was a citizen of the Country of France, and a resident of the Country of Tunisia, and otherwise *sui juris*.

2.      At all times relevant hereto, Plaintiff Bouzid is and was a citizen of the Country of France, and a resident of the Country of Tunisia, and otherwise *sui juris*.

3.      Upon information and belief, and at all material times hereto, Defendant Zaibet is and was a citizen of the State of Florida and a resident of Miami-Dade County, Florida, and otherwise *sui juris*.

4.      At all material times hereto, Defendant Zaibet has maintained a prolific social media presence on platforms such as Twitter and Instagram[2], wherein Zaibet touts himself as being a successful entrepreneur, investor and rapper performing under the name "Swagg Man," and frequently makes posts of himself wearing high-end designer watches and clothing, driving luxury sports-cars and other exotic vehicles, and brags about his wealth, various successes and business ventures.

5.      Upon information and belief, and at all material times hereto, Defendant Rebulard[3] is and was a citizen of the State of Florida and a resident of Miami-Dade County, Florida, and otherwise *sui juris*.

6.      Upon information and belief, and at all material times hereto, Defendants, Zaibet and Rebulard, have been the sole owners, operators, and alter egos of Defendants, Luxury Properties and Beach Properties.

---

[2]Zaibet's followers on social media are located throughout the world, however, the overwhelming majority of his followers either reside in parts of Europe or Africa, or are of Tunisian or French descent, such as Plaintiffs here.

[3]Upon information and belief, and at all material times hereto, Defendants Zaibet and Rebulard have been married to one another as husband and wife.

7.      Upon information and belief, at all times relevant hereto, Defendant Luxury Properties is a corporation existing under the laws of the state of Delaware, with its principal place of business located at 7901 4th Street North, Suite 300, St. Petersburg, Florida 33702.

8.      Upon information and belief, at all times relevant hereto, Defendant Beach Properties is a corporation existing under the laws of the state of Delaware, with its principal place of business located at 7901 4th Street North, Suite 300, St. Petersburg, Florida 33702.

9.      Upon information and belief, and at all material times hereto, the Trust is and has been a self-settled trust[4], created by Defendant Zaibet, with Defendant Luxury Properties, a shell-company created and controlled by Zaibet and/or Rebulard, acting as "successor trustee" of the Trust, and existing solely for the benefit of Defendants Zaibet and Rebulard,[5] and the title record owner of real property located in Miami-Dade County, Florida.

10.      Upon information and belief, and at all material times hereto, Guzman Trust, is and has been a self-settled trust, created by Defendant Zaibet, and under which Zaibet and/or Rebulard act as the trustee(s) and the only identified beneficiaries thereunder.  Upon information and belief, the Guzman Trust was funded by Defendant Zaibet with funds fraudulently obtained from his unsuspecting victims under the instant scheme(s), such as Plaintiffs here, and has been used by Defendant Zaibet to shield his identity as the beneficial owner of certain high-end luxury vehicles, including a 2017 Lamborghini LP 580-2 Spyder, located in Miami-Dade County, Florida.

---

[4]As a matter of law, self-settled trusts are prohibited under Florida law as contrary to public policy. *See* Fla. Stat. §§ 736.0402-0404.
[5]*See* Certification of Trust dated April 12, 2022, and recorded in Book 33125, Page 342 of the Official Records of Miami-Dade County, Florida, attached hereto as **Exhibit "1."**

11.     Upon information and belief, and at all material times hereto, Defendant AAA is and has been a corporation existing under the laws of the state of Florida, with its principal place of business located at 3511 W. Commercial Boulevard, Suite 304, Fort Lauderdale, Florida 33009.

12.     Upon information and belief, and at all material times hereto, Defendants, Tenord and Previlus, have been the sole owners, operators, and alter egos of Defendant AAA.

13.     Upon information and belief, and at all material times hereto, Defendant Tenord is and was a citizen of the State of Florida and a resident of Broward County, Florida, and otherwise *sui juris*.

14.     Upon information and belief, and at all material times hereto, Defendant Previlus is and was a citizen of the State of Florida and a resident of Broward County, Florida, and otherwise *sui juris*.

15.     Upon information and belief, and at all material times hereto, Defendant RES Investment is and has been a limited liability company organized under the laws of the state of Florida, with its principal place of business located at 3511 W. Commercial Boulevard, Suite 304, Fort Lauderdale, Florida 33009.  Upon information and belief, and at all material times hereto, Defendants, Tenord and Previlus, have been and are the only members of Defendant Res Investment, and the alter egos of Res Investment, thereby making Defendant Res Investment a citizen of the State of Florida for purposes of diversity jurisdiction.

16.     Upon information and belief, and at all material times hereto, Defendant Infinite Res is and has been a limited liability company organized under the laws of the state of Nevada, with its principal place of business located at 2181 SW Newport Isles Boulevard, Port Saint Lucie, Florida 34953.  Upon information and belief, and at all material times hereto, Defendants, Tenord and Previlus, have been and are the only managing members of Defendant Infinite Res, and the

alter egos of Infinite Res, thereby making Defendant Infinite Res a citizen of both the State of Nevada and Florida for purposes of diversity jurisdiction.

17.     Upon information and belief, and at all material times hereto, Defendant New Miami is and has been a corporation existing under the laws of the state of Florida, with its principal place of business located at 10950 N. Kendall Drive, Suite 200, Miami, Florida 33176.

18.     This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States, in addition to pursuant to 28 U.S.C. §1332(a), as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and there is complete diversity amongst the Plaintiffs and Defendants.  This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because the events and omissions giving rise to the claims occurred within this District and the real property that is the subject of this action is located in this District.

20.     Plaintiffs have engaged undersigned counsel and agreed to pay counsel its reasonable attorneys' fees for all services rendered in this action.

21.     All conditions precedent to the bringing of this action have been satisfied, excused or waived.

## **GENERAL ALLEGATIONS**

22.     Like so many before them,[6] beginning in or around April 2020, Defendants set their sights on Plaintiffs.

---

[6]Notably, Defendant Zaibet's victims generally shared a common trait or characteristic.  In the case of the Plaintiffs here, Zaibet preyed on the fact that like him, they were also of Tunisian descent.

23.     Despite having never met Defendant Zaibet before, and only knowing of him by way of his large social media presence in Europe and parts of Africa, in or around April 2020, Plaintiffs were approached in Tunisia by Defendant Rebulard and presented with "an opportunity of a lifetime" --- to invest in a South Florida real estate fund led by the "world renowned" and "successful" entrepreneur and investor, Defendant Zaibet.[7]

24.     Once Rebulard sensed Plaintiffs intrigue and interest, she proceeded to arrange for a person meeting in Tunisia between Plaintiffs and Defendant Zaibet, where he would present Plaintiffs with a fund "prospectus" and "vision statement" for their investments.

25.     As promised by Rebulard, within mere weeks thereafter, the Plaintiffs were sitting face-to-face with Defendant Zaibet (in full his Swagg man attire, including wearing his luxury clothing, diamond necklaces and watch), to hear about his "new investment" opportunity to acquire indirect ownership of luxury real estate located in Fort Lauderdale, Florida, which pitch meeting led to Zaibet "offering" the Plaintiffs the opportunity to participate in his "fund's" first property acquisition—a property located at 5421 Bayview Drive, Fort Lauderdale 33308 (the "First Property"), for the low initial investment price of 1,600,000.00 euros.

26.     Skeptical at first, Zaibet, with the help of Defendant Rebulard, turned on the charm, baiting the Plaintiffs with tall tales of his childhood coincidently spent in the same part of Tunisia

---

[7]Unbeknownst to Plaintiffs at the time, Zaibet's purported success was all "smoke and mirrors" and the result of scams run by him throughout multiple different countries across the world—many of which had resulted in criminal indictments and being flagged by Interpol. Likewise, at the time of this "chance" encounter, Plaintiffs were never told nor were they aware of the fact that Rebulard was married to Zaibet. Notably, while still ongoing, Zaibet's scams have not gone unnoticed by authorities throughout the world, including in Tunisia, wherein Zaibet was convicted by the Tunisian High Court of defrauding 20 different victims, the majority of which were French nationals, and sentenced to 20 years imprisonment, which to date, he has successfully avoided serving.

where the Plaintiffs resided and providing Plaintiffs with a list and pictures of how his previously successful real estate investments throughout the world.

27.     Knowing he had Plaintiffs on his line, Zaibet finally closed the deal and convinced Plaintiffs that their "investment" was a no-brainer by assuring them that he had already been in contact with the seller of the First Property, "Florida Luxury Realty Corp" and had negotiated a favorable sales price, that would enable Plaintiffs to maximize the return on their investment once Zaibet's fund was able to re-sell the First Property for a profit shortly after its acquisition.

28.     To eliminate any doubt and concern the Plaintiffs may have had regarding Zaibet's claims relating to the discounted purchase price of the First Property or the plans of his fund to return a positive return on Plaintiffs' investment within months, to further the supposed "legitimacy" of the deal, Zaibet and Rebulard, presented Plaintiffs with a slew of documents purporting to evidence the listing and proposed sale of the First Property by "Florida Luxury Realty Corp.," including wire deposit instructions prepared on "Florida Luxury Realty Corp." letterhead, which directed Plaintiffs to wire the sum of €1,525,000.00 for their investment related to the purchase of the First Property to an account held at Wells Fargo Bank in the name of AAA, a company, although unfamiliar to Plaintiffs, was represented by Zaibet and Rebulard to be associated, affiliated with and/or controlled by "Florida Luxury Realty Corp."  A copy of the "Florida Luxury Realty Corp." Wiring Deposit Instructions provided to Plaintiffs are attached hereto as **Exhibit "2."**

29.     Uneasy, and concerned by the directions set forth by the Deposit Wiring Instructions, Plaintiffs immediately reached out to their trusted colleague, Defendant Zaibet, for assurance regarding the accuracy of the wire instructions and the appropriateness of sending the requested funds to an account held in the name of a different company, i.e., AAA.  In response,

despite knowing such information to be patently false and that Plaintiffs had placed their trust and repose in him to guide them through the subject investment[8], Zaibet outright lied to the Plaintiffs in breach of fiduciary duties by re-assuring Plaintiffs that there was nothing to be concerned about, explaining to Plaintiffs that AAA was acting as the "Escrow Agent" for "Florida Luxury Realty Corp." in connection with the acquisition of the First Property, none of which facts were even the slightest bit true.

30.     Thereafter, at the behest of Defendant Zaibet, Plaintiffs proceeded to wire the requested investment of €1,525,000.00 pursuant to the "Florida Luxury Realty Corp." Wiring Deposit Instructions.  More specifically, at the direction of Zaibet, Plaintiffs made the following transfers, intended as a series of investments in Zaibet's real estate fund, to the AAA account at Wells Fargo, premised on the good faith belief and representations of Zaibet that AAA was acting as the "Escrow Agent" for "Florida Luxury Realty Corp." in connection with the acquisition of the First Property:[9]

| **Date** | **To/From** | **Amount** |
|---|---|---|
| November 10, 2021 | Muller to Zaibet | 200,000 dinars (62,172 euros) |
| November 12, 2021 | Muller to Zaibet | 100,000 dinars (31,086 euros) |
| November 18, 2021 | Muller to Zaibet | 30,000 dinars (9,325 euros) |
| December 3, 2021 | Muller to AAA Plus Financial Group Inc. | 500,000 euros |

---

[8] Zaibet was likewise aware of the fact that neither of the Plaintiffs either spoke or understood the English language and were fully reliant on him to translate and explain the various transaction related documents and communications.
[9] True and correct copies of AAA's bank records from Wells Fargo reflecting the foregoing fraudulent transfers are attached hereto as **Composite Exhibit "3."**

| December 8, 2021 | Muller to AAA Plus Financial Group Inc. | 500,000 euros |
|---|---|---|
| December 23, 2021 | Muller to AAA Plus Financial Group Inc. | 250,000 euros |
| January 7, 2022 | Muller to AAA Plus Financial Group Inc. | 250,000 euros |
| | | **Total**: 1,602,583 euros |

31.     However, notwithstanding the fact that AAA's business operations were nearly dormant for the months (and possibly years) preceding Plaintiffs' transfers, the company had little reported revenue, and its bank account(s) had minimal activity during such time, Wells Fargo failed to flag the AAA account or make any type of inquiry as to the source of the significant sums of money being wired and deposited into AAA's account from various international sources or regarding the reasons underlying increased account activity, nor sought clarification from AAA or its principals regarding why such funds, immediately upon receipt, were then being transferred to multiple bank accounts held at other financial institutions in the name of other parties or otherwise being withdrawn from the account.

32.     However, contrary to the representations made by Defendants Zaibet and Rebulard, there was no actual South Florida real estate fund started by Zaibet, no investment opportunity for the Plaintiffs in any such fund, nor was the First Property either owned by "Florida Luxury Realty Corp." or available for sale.  Rather, Plaintiffs were fraudulently induced by Defendants Zaibet and Rebulard to invest in a fake real estate fund for the purchase of a property that was **never** available for sale, and to send their investment to a fake "Escrow" account having no actual connection to the sale of the First Property or otherwise having anything to do with the owner of

the subject property, but that was instead controlled by AAA, a wholly owned shell company with no actual business purpose, controlled by Zaibet's affiliates and co-conspirators, Defendants, Tenord and Previlus.

33.     Unfortunately, before the Plaintiffs could even uncover the fact that the First Property was never for sale and that they were the victims of a massive multi-million-dollar scam orchestrated by Defendant Zaibet and his affiliates, it was far too late, as Plaintiffs' investment money sent to the AAA was long gone, having been distributed amongst Zaibet and his co-conspirators for their own personal use and moved to various shell companies or used to make payment for the purchases of other real estate unrelated to the First Property and otherwise completely unknown to the Plaintiffs.

34.     Indeed, as reflected by AAA's attached bank statements from Wells Fargo, each time monies intended as Plaintiffs' investment were received by AAA, such funds were immediately diverted for unintended or agreed upon purposes, including, but not limited to:

- Upon information and belief, in or around November, 2021, an unknown sum of money was sent and/or withdrawn from the AAA account by, or for the benefit of, Defendants Zaibet, Rebulard, and/or the Trust, to pay the 2021 Miami-Dade County Real Estate Taxes and maintenance costs associated with the real property located at 888 Biscayne Boulevard, Unit 2501, Miami, FL 33132 (the "2501 Property"), which real property was owned by and held by the Trust at all relevant times hereto;

- On December 7, 2021- $100,000.00 wire transfer sent from the AAA account to Windmill Title Real Estate on behalf of the Trust as an initial down payment in connection with the

Trust's acquisition of the real property located at 1100 Biscayne Blvd, Unit 4601, Miami, FL 33132 (the "4401 Property");[10]

- On December 10, 2021-$140,000.00 wire transfer sent from the AAA account to New Miami Realty Corp. on behalf of the Trust as an initial down payment in connection with the Trust's acquisition of the real property located at 888 Biscayne Boulevard, Unit 4601, Miami, FL 33132 (the "4601 Property");[11]

- On December 23, 2021- $300,000.00 wire transfer sent from the AAA account to Space Coast Credit Union on behalf of Defendant Res Investment in connection with the acquisition of the real property located at 8356 Calumet Court, Port Saint Lucie, FL 34986 (the "Port St. Lucie Property")[12];

- On December 28, 2021- $636,985.36 wire transfer sent from the AAA account to Windmill Title Real Estate on behalf of the Trust for cash to close on the 4401 Property;

- On January 13, 2022- $195,000.00 wire transfer sent from the AAA account to Space Coast Credit Union on behalf of Defendant Res Investment as 2nd deposit on purchase of the Port St. Lucie Property;

- On January 18, 2022-$466,396.79 wire transfer sent from the AAA account to Windmill Title Real Estate on behalf of the Trust for cash to close on the 4601 Property;

---

[10]The Trust entered into an "AS IS" Residential Contract for Sale and Purchase of the 4401 Property with Seller, Marquis 4401, LLC, for the total purchase price of $1,400,000.00, a true and correct copy of which is attached hereto as **Exhibit "4."**

[11]The Trust entered into an "AS IS" Residential Contract for Sale and Purchase of the 4601 Property with Seller, Conde Group, LLC, for the total purchase price of $735,000.00. A true and correct copy of the relevant Warranty Deed for the 4601 Property is attached hereto as **Exhibit "5."**

[12] RES Investment entered into an "AS IS" Residential Contract for Sale and Purchase of the Port St. Lucie Property with Sellers, Mark & Lisa Anzil, for the total purchase price of $1,330,000.00, a true and correct copy of which is attached hereto as **Exhibit "6."**

- On February 11, 2022-$48,700.00 wire transfer sent from the AAA account to South Florida Title Union on behalf of Defendant Res Investment for cash to close on the Port St. Lucie Property; and

- Upon information and belief, in or around May, 2022, an unknown sum of money was also sent from the AAA account to VA Leasing on behalf of Defendants Zaibet and Guzman Trust to purchase a 2017 Lamborghini Huracan LP 580-2 Convertible, VIN No.: ZHWUR2ZF7HLA07476 (the "Lamborghini").[13]

35.     Thereafter, on or about September 1, 2022, to launder the proceeds of their ill-gotten gains, Defendant Res Investment sold the Port St. Lucie Property to 3rd party buyer, P&V Properties Management, LLC, for the sale price of $1,615,000.00, for an approximate $300,000 profit within 6 months of its initial acquisition.[14]

36.     Upon information and belief, shortly before or contemporaneously with the sale of the Port St. Lucie Property by Defendant Res Investment, Defendants, Tenord and Previlus, formed Defendant Infinite Res in the state of Nevada, a shell-company with no legitimate business purpose other than to realize and/or hold the proceeds from the sale of the Port St. Lucie Property.

37.     Upon information and belief, Defendant Infinite Res is the alter ego of Defendants, Tenord and Previlus and has no functional business operation, is undercapitalized, and exists exclusively as a means for Defendants, Tenord and Previlus, to hinder or thwart the efforts of their creditors.

---

[13] Upon information and belief, the MSRP of the 2017 Lamborghini is $262,350.00.

[14] A copy of the General Warranty Deed transferring title of the St. Lucie Property to P&V Properties is recorded at Book 4882, Page 2428, of the Official Records of Saint Lucie County, Florida.

38.     In furtherance of Defendants' scheme, on or about October 21, 2022 [less than 10 months after its acquisition], and to launder significant amounts of Plaintiffs' investment monies, through the listing and marketing services of Defendant New Miami, the Trust sold the 4601 Property to 3rd party buyer, Matthew Amys, for the sale price of $800,000.00, turning a quick $65,000.00 profit on said property.

39.     Upon information and belief, the proceeds from the sale of the 4601 Property were immediately transferred by Defendant Zaibet, with the assistance of unknown co-conspirators, from the Trust's bank account to various unknown location(s).

40.     Despite repeated demand by the Plaintiffs to the Defendants for the return of their investment monies, all Defendants have ceased communicating with Plaintiffs, who have not received any part of their investment back.

41.     As a result of the fraud committed as described herein, Plaintiffs have been harmed in an amount of no less than €1,602,583.

### COUNT I: WIRE FRAUD PURSUANT TO 18 U.S.C. §1343
(Against Zaibet, Rebulard, Tenord and Previlus)

42.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

43.     Zaibet, Rebulard, Tenord and Previlus, knowingly devised and participated in a scheme to defraud the Plaintiffs by making representations that that they were making investments in real estate on the Plaintiffs' behalf when in fact they were using the funds for their own personal benefit.

44.     Zaibet, Rebulard, Tenord and Previlus, participated willingly in the scheme with the intent to defraud the Plaintiffs out of their money.   Zaibet and Rebulard made misrepresentations to the Plaintiffs that they would invest their funds in the First Property.   In

reality, Zaibet and Rebulard, provided wiring instructions to an account controlled by them and/or Tenord and Previlus, who then took the funds to purchase, amongst other things, the 4401 Property, the 4601 Property, and the Port St. Lucie Property, for their own exclusive use and benefit.[15]

45.     Zaibet, Rebulard, Tenord and Previlus, made use of the interstate wires for purposes of executing the scheme on December 3, 2021, December 8, 2021, December 23, 2021, and January 7, 2022, when they had Plaintiffs wire them funds to the AAA account.

46.     Muller and Bouzid have been damaged by being deprived of at least 1,602,583 euros due to Zaibet, Rebulard, Tenord and Previlus's wire fraud.

WHEREFORE, Muller demands judgment against Zaibet, Rebulard, Tenord and Previlus, for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

### COUNT II: MAIL FRAUD PURSUANT TO 18 U.S.C. §1341
(Against Zaibet, Rebulard, Tenord and Previlus)

47.     Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

48.     Mail fraud occurs whenever a person, having devised or intending to devise any scheme or artifice to defraud, uses the mail for the purpose of executing such scheme or artifice or attempting to do so.

49.     Zaibet, Rebulard, Tenord and Previlus, intentionally participated in a scheme to defraud Plaintiffs of their money by orchestrating an investment scheme in which Zaibet, Rebulard, Tenord and Previlus, took Plaintiffs' investments for their own exclusive personal use.

---

[15]In addition to the foregoing properties, Plaintiffs' funds were also used for personal purchases by the Defendants, including to purchase multiple high-end watches, including Barello uhren juwelen (luxury watches), in total of approximately $170,150.00.

50.     Zaibet, Rebulard, Tenord and Previlus, used the interstate mails in furtherance of their scheme.

WHEREFORE, Plaintiffs demand judgment against Zaibet, Rebulard, Tenord and Previlus, for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

## COUNT III: CIVIL RICO PURSUANT TO 18 U.S.C. §1964
(Against Zaibet, Rebulard, Tenord and Previlus)

51.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

52.     The RICO Act provides a private civil remedy to recover treble damages to "any person injured in his business or property by reason of a violation" of the substantive provisions contained in §1962 of the RICO Act.  *See* 18 U.S.C. § 1964(c).

53.     Defendants Zaibet, Rebulard, Tenord and Previlus, engaged in unlawful conduct by committing wire fraud and Mail Fraud by having Plaintiffs' wire and/or mail a total of 1,602,583 euros of their funds on December 3, 2021, December 8, 2021, December 23, 2021, and January 7, 2022.

54.     Zaibet, Rebulard, Tenord and Previlus, are individuals associated in fact for the purpose of committing fraudulent activities (such as wire and mail fraud) against unsuspecting persons.

55.     The wire and mail fraud committed by Zaibet, Rebulard, Tenord and Previlus, shows a pattern of criminal activity.  No less than five predicate acts of wire and/or mail fraud have been committed by Zaibet, Rebulard, Tenord and Previlus, within the last ten years.

56.     The unlawful wire fraud committed by Zaibet, Rebulard, Tenord and Previlus, constitute unlawful racketeering activity since it is a violation of 18 U.S.C. §1344.

57.     Plaintiffs have been damaged by being purloined of at least 1,602,583 euros due to the Defendants' racketeering activity and are entitled to treble damages in an amount no less than 4,807,749 euros[16], together with an award of attorney's fees and costs.

WHEREFORE, Plaintiffs demand judgment against Zaibet, Rebulard, Tenord and Previlus, for monetary damages, compensatory damages, attorney's fees and costs, treble damages, and for any further relief this Court may deem just and proper.

### COUNT IV: UNJUST ENRICHMENT
(Against Zaibet, Rebulard, Tenord, Previlus, AAA, Res Investment, Guzman Trust, and Infinite Res)

58.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

59.     Plaintiffs conferred a benefit on Defendants, Zaibet, Rebulard, Tenord, Previlus, AAA, Res Investment, Guzman Trust, and Infinite Res, by transferring to Zaibet, Rebulard, and AAA a total of 1,602,583 euros on December 3, 2021, December 8, 2021, December 23, 2021, and January 7, 2022, which funds were then distributed and used by the Defendants for unlawful purposes to the detriment of Plaintiffs.

60.     Zaibet, Rebulard, Tenord, Previlus, AAA, Res Investment, Guzman Trust, and Infinite Res, received and accepted the benefit conferred on them by Plaintiffs.

61.     Zaibet, Rebulard, Tenord, Previlus, AAA, Res Investment, Guzman Trust, and Infinite Res, had knowledge of the benefit conferred on them by Plaintiffs.

62.     The circumstances are such that it would be inequitable to allow Zaibet, Rebulard, Tenord, Previlus, AAA, Res Investment, Guzman Trust, and Infinite Res, to retain the benefits

---

[16]Based on currency conversion market rates as of June 1, 2023, 1 euro= $1.0715 USD; thus, Plaintiffs are seeking treble damages under this Count equal to $5,151,503.05.

conferred on them.  Zaibet, Rebulard, Tenord, Previlus, AAA, Res Investment, Guzman Trust, and Infinite Res, did not use the funds provided by Plaintiffs for Plaintiffs' intended investment in the First Property (which was not even for sale), but instead used the funds for Zaibet, Rebulard, Tenord, Previlus AAA, Res Investment, Guzman Trust, and Infinite Res's personal use and exclusive benefit.

WHEREFORE, Plaintiffs demand judgment against Zaibet, Rebulard, Tenord, Previlus AAA, Res Investment, Guzman Trust, and Infinite Res, for monetary damages, compensatory damages, attorney's fees and costs, treble damages, and for any further relief this Court may deem just and proper.

## COUNT V: FRAUDULENT MISREPRESENTATION
(Against Zaibet and Rebulard)

63.    Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

64.    Zaibet and Rebulard made false statements of material fact to Plaintiffs regarding the investment to be made in the First Property.  Zaibet and Rebulard represented to the Plaintiffs that the First Property was for sale and that their funds would be invested in the First Property. However, in reality, Zaibet and Rebulard knew that the First Property was not for sale and the funds received from Plaintiffs would instead be used by Zaibet and Rebulard for their personal use and benefit including, but not limited to, payment of the property taxes and maintenance on the 2501 Property, and acquisition of the 4401 Property and 4601 Property.

65.    Zaibet and Rebulard knew their representations regarding the investment and purchase of the First Property and the use of Plaintiffs' funds therein were false.

66.    Zaibet and Rebulard intended that their false statements induce Plaintiffs into transferring, directly and indirectly, the total sum of 1,602,583 euros, which funds would

ultimately be used by, without limitation, Zaibet and Rebulard, for their own personal use and benefit to the detriment of Plaintiffs.

67.     Plaintiffs have been damaged by being deprived of at least 1,602,583 euros due to the Defendants' fraudulent misrepresentations.

WHEREFORE, Plaintiffs demand judgment against Zaibet and Rebulard for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

## COUNT VI: NEGLIGENT MISREPRESENTATION
### (Against Zaibet and Rebulard)

68.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

69.     This Count is pled in the alternative to Count V (Fraudulent Misrepresentation).

70.     Zaibet and Rebulard made false statements of material fact to Plaintiffs regarding the investment to be made in the First Property. Zaibet and Rebulard represented to Plaintiffs that the First Property was for sale and that Plaintiffs' funds would be used to invest in the First Property.  In reality, the First Property was not for sale and the funds were not used for represented invested purposes or the purchase of the First Property.

71.     Zaibet and Rebulard should have known that their misrepresentations regarding the investment in and purchase of the First Property were false.

72.     Zaibet and Rebulard intended that their false statements induce Plaintiffs into transferring, directly and indirectly, the total sum of 1,602,583 euros, which funds would ultimately be used by, without limitation, Zaibet and Rebulard, for their own personal use and benefit to the detriment of Plaintiffs.

73.     Plaintiffs acted in justifiable reliance upon Zaibet and Rebulard's misrepresentations since it was reasonable for Plaintiffs to expect that Zaibet and Rebulard were investing Plaintiffs funds in connection with the acquisition of the First Property.

74.     Plaintiffs have been damaged by being deprived of at least 1,602,583 euros due to the Defendants' negligent misrepresentations.

WHEREFORE, Plaintiffs demand judgment against Zaibet and Rebulard for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

## COUNT VII: BREACH OF FIDUCIARY DUTY
(Against Zaibet and Rebulard)

75.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

76.     Unable to speak or understand the English language or familiar with the laws of the United States, Plaintiffs and Defendants Zaibet and Rebulard, shared a relationship whereby Plaintiffs reposed their trust and confidence in Zaibet and Rebulard in connection with the subject investments, and Zaibet and Rebulard undertook such trust and assumed a duty to advise, counsel, and/or protect Plaintiffs in connection with same.

77.     Defendants Zaibet and Rebulard breached their duties to Plaintiffs.

78.     As a result of Defendants Zaibet and Rebulard's breaches of their fiduciary duties, Plaintiffs have suffered damages of no less than 1,602,583 euros.

WHEREFORE, Plaintiffs demand judgment against Zaibet and Rebulard for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

## COUNT VIII: CONSTRUCTIVE TRUST
### (Against Zaibet and Rebulard)

79.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

80.     Zaibet and Rebulard made a promise to Plaintiffs that they would invest money in the First Property in exchange for a share the profits of such investment(s) with Plaintiffs.

81.      Plaintiffs in fact performed their obligations under such agreement by transferring and/or providing (directly or indirectly) to Zaibet and/or Rebulard, the total sum of 1,602,583 euros.

82.     Zaibet and Rebulard held a confidential relationship with Plaintiffs since they were investing funds in the First Property, on their behalf, and with their trust and confidence.

83.     Zaibet and Rebulard were unjustly enriched by being provided 1,602,583 euros, which were not used for the purchase of the First Property, but were used, in part, for the benefit of the Trust to pay the property taxes on the 2501 Property and acquire the 4401 and 4601 Properties, in addition to purchase the Port St. Lucie Property by RES Investment, and Lamborghini by Guzman Trust.

84.     This Court must impose an equitable trust on the 2501, 4401, and 4601 Properties, the Port St. Lucie Property and Lamborghini, in addition to any other property, real or personal, obtained by and otherwise benefiting from the funds originally transferred by Plaintiffs to AAA's bank account at Wells Fargo.

WHEREFORE, Plaintiffs demand that this Court impose a constructive trust on any funds sent by Plaintiffs to AAA's bank account at Wells Fargo, including, but not limited to, any such amounts used in connection with the maintenance and/or acquisition of the 2501, 4401, 4601, and Port St. Lucie Properties and/or Lamborghini.

### COUNT IX: CONSPIRACY
(Against Zaibet and Rebulard)

85.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

86.     Zaibet and Rebulard entered into an agreement to do the unlawful act of fraudulently misrepresenting to Plaintiffs that they would be investing in the First Property when, in reality, Zaibet and Rebulard intended to take Plaintiffs' funds for their own personal use.

87.     Zaibet and Rebulard executed overt acts in pursuance of the conspiracy by making false misrepresentations to Plaintiffs and taking Plaintiffs' funds for their own personal use and benefit.

88.     Plaintiffs have been damaged as a result of the Zaibet and Rebulard's conspiracy by being deprived of no less than 1,602,583 euros, which were not used for the investment in or purchase of the First Property, but which were used for the exclusive use and benefit of Zaibet and Rebulard, to the detriment of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Zaibet and Rebulard for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

### COUNT X: VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934- 15 U.S.C. § 78j(b); RULE 10b-5; 17 C.F.R. § 240.10b-5
(Against Zaibet and Rebulard)

89.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

90.      Zaibet and Rebulard made material misrepresentations and/or omissions to Plaintiffs regarding the use of the Plaintiffs' funds with intent to defraud and scheme the Plaintiffs.

91.     The material misrepresentations and/or omissions made to the Plaintiffs concern the sale and purchase of a security.

92.     Plaintiffs relied on Zaibet and Rebulard's material misrepresentations and/or omissions in purchasing the offered security and the material misrepresentations and/or omissions were the "transactional causation" for the purchase of the security.

93.     Plaintiffs suffered an economic loss caused by Zaibet and Rebulard material misrepresentations and/or omissions.

WHEREFORE, Plaintiffs demand judgment against Zaibet and Rebulard for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

## COUNT XI: LIABILITY OF CONTROLLING PERSONS
## 15 U.S.C. § 78T
(Against Zaibet and Rebulard)

94.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

95.     Defendants, Luxury Properties, Beach Properties, and the Trust committed a primary violation of the Securities Exchange Act of 1934, as more specifically alleged in Count X above.

96.     By virtue of being the sole owners, operators, and alter ego(s) of the Defendants, Luxury Properties, Beach Properties, and the Trust, the defendants sued in this count had the power to control the general business affairs of the above named Defendants, and had the power to directly control or influence the specific company policies that created the scheme and/or resulted in the sale of the securities to Plaintiffs as alleged herein.

97.     Defendants, Zaibet and Rebulard, had control over all essential aspects of the statements made to Plaintiffs in the above-described solicitation materials and had actual and/or beneficial control over the AAA bank account, which received funds from the Plaintiffs in connection with the sales and purchase of securities.

98.     As a direct and proximate result of Defendants, Zaibet and Rebulard's deception and/or manipulation in connection with the purchase and sale of securities in the Defendant companies named in this county, Plaintiffs purchased no less than 1,602,583 euros worth[17] of unregistered securities in the time period described herein and suffered economic losses in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment against Zaibet and Rebulard for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

**COUNT XII: VIOLATION OF FLORIDA'S SECURITIES INVESTOR PROTECTION ACT- FLA. STAT. §§ 517.00, *ET SEQ.***
(Against Zaibet and Rebulard)

99.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

100.     Florida Statutes §517.301(1)(a) makes it unlawful for a person to "employ . . . artifice to defraud," or use "any untrue statement of a material fact or any omission . . . [to] mislead" in connection with the sale of any investment or security.

101.     Zaibet and Rebulard made material misrepresentations and/or omissions to Plaintiffs regarding the use of the Plaintiffs' funds with intent to defraud and scheme the Plaintiffs.

102.     The material misrepresentations and/or omissions made to the Plaintiffs concern the sale and purchase of a security.

103.     Plaintiffs relied on Zaibet and Rebulard's material misrepresentations and/or omissions in purchasing the offered security and the material misrepresentations and/or omissions were the transactional causation for the purchase of the security.

---

[17]Or the equivalent of $1,716,951.34 USD.

104.     Plaintiffs suffered economic loss caused by Zaibet and Rebulard's material misrepresentations and/or omissions.

WHEREFORE, Plaintiffs demand judgment against Zaibet and Rebulard for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

## COUNT XIII: EQUITABLE LIEN
(Against Zaibet, Rebulard, the Trust, RES Investment, and Guzman Trust)

105.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

106.     Plaintiffs possess a right to proceed against the 2501, 4401, 4601, and Port St. Lucie Properties and/or Lamborghini, since such properties and assets were purchased with the Plaintiffs' funds (due to fraud) – with the knowledge of the Defendants.

107.     Out of a general consideration of a right or justice, this Court should impose an equitable lien on the foregoing properties and assets of the Defendants.

WHEREFORE, Plaintiffs demand that this Court impose an equitable lien against the 2501, 4401, 4601, and Port St. Lucie Properties and Lamborghini in favor of the Plaintiffs, and for any further relief this Court may deem just and proper.

## COUNT XIV: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
(Against New Miami)

108.     Plaintiffs re-allege and re-incorporate the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

109.     Defendants Zaibet and Rebulard owed a fiduciary duty, as described herein, to the Plaintiffs.

110.     Defendants Zaibet and Rebulard breached their fiduciary duty owed to Plaintiffs as described herein.

111.    Defendant New Miami had knowledge of the breaches of fiduciary duty committed by Defendants Zaibet and Rebulard against Plaintiffs.

112.    Through its actions, Defendant New Miami provided Defendants Zaibet and Rebulard with substantial assistance and encouragement of their breach of the fiduciary duties owed to Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against New Miami for monetary damages, compensatory damages, and for any further relief this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: June 20, 2023

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Counsel for Plaintiffs*
110 Southeast Sixth Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: (954) 728-1280
Facsimile: (954) 678-4090
E-Service: ftlemaildesig@lewisbrisbois.com

By:*/s/ David H. Haft*
        David H. Haft
        Florida Bar No. 68992
        david.haft@lewisbrisbois.com
        aviva.pasternak@lewisbrisbois.com

## VERIFICATION

Under penalties of perjury, we declare that we have read the foregoing Verified Complaint and that the facts stated in it are true and correct.

**PATRICK MULLER:**

Patrick Muller

**MOUNA BOUZID:**

Mouna Bouzid

SWORN        TO        and        SUBSCRIBED        before        me        by _Mohamed yassine Louhichi_ on _11 June_, 2023.

Notary Public in and for the State of _Tunisia - Sousse_
My Commission Expires: _____