UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)

CASE NO.: 1:23-CV-22276-BB

PATRICK MULLER, an individual, and
MOUNA BOUZID, an individual,

    Plaintiffs,

v.

ITEB ZAIBET a/k/a/ "Swagg Man", an individual,
LOLITA C. REBULARD, an individual, LUXURY
PROPERTIES INC., a Delaware corporation,
BEACH PROPERTIES RENTAL, INC., a
Delaware corporation, LUXURY PROPERTIES
TRUST u/a/d/ March 2, 2018, AAA PLUS
FINANCIAL GROUP INC., a Florida corporation,
YVETTE TENORD, an individual, JOHNNY
PREVILUS, an individual, RES INVESTMENT
INTER, INC., a Florida corporation, INFINITE
RES INVESTMENT, LLC, a Nevada limited
liability company, MIAMI REALTY, CORP., a
Florida corporation, and GUZMAN305 TRUST, a
Florida trust,

    Defendants.
_____/

## DEFENDANTS', AAA PLUS FINANCIAL GROUP INC., RES INVESTMENT INTER, INC., AND INFINITE RES INVESTMENT, LLC, MOTION TO DISMISS COMPLAINT

Defendants, AAA Plus Financial Group Inc. ("AAA"), Res Investment Inter, Inc. ("Res Investment"), and Infinite Res Investment, LLC ("Infinite Res"), pursuant to Fed. R. Civ. P. 12(b) and Local Rule 7.1, moves to dismiss Plaintiffs', Patrick Muller ("Muller") and Mouna Bouzid ("Bouzid") (hereinafter Muller and Bouzid are collectively referred to as "Plaintiffs"), Complaint and state:

1

## I. INTRODUCTION

Plaintiffs assert a state law cause of action for unjust enrichment ("Count 4") against Defendants AAA, Res Investment, and Infinite Res Investment. Plaintiffs also seek an equitable lien against Res Investment's properties and assets ("Count 13").

Defendant AAA operates a Wells Fargo business checking account which is at issue in this lawsuit. Defendant Res Investment is a Florida profit corporation and was the sole owner of real property located at 8356 Calumet Court, Port St. Lucie, Florida 34986.[1] Defendant Infinite Res is a Nevada limited liability company. Defendants Johnny Previlus and Yvette Tenord collectively own AAA, Res Investment, and Infinite Res. They are both employed and licensed in the real estate industry and are in the business of buying and selling real estate.

## II. STATEMENT OF FACTS

Plaintiffs allege, and necessarily rely on, the following factual allegations to support their claims against Defendants AAA, Res Investment, and Infinite Res:

Defendants Johnny Previlus and Yvette Tenord are the sole members, owners, operators, and/or "alter egos" of Defendants AAA Plus Financial Group, Inc. ("AAA"), Res Investment Inter, Inc. ("Res Investment"), and Infinite Res Investment, LLC ("Infinite Res"). *See* D.E. 1, ¶ 12, 15, 16.

Plaintiffs entered into a business transaction with Defendant Iteb Zaibet ("Zaibet") to invest in South Florida real estate. *See* D.E. 1, ¶ 23. Plaintiffs intended to invest in a property located at 5421 Bayview Dr., Fort Lauderdale, FL 33308, and were instructed to wire €1,525,000.00 to Defendant Florida Luxury Realty Corp. ("Florida Luxury") as the seller of the property. *See* D.E. 1, ¶ 28. The wiring instructions were provided on a Florida Luxury letterhead, and directed

---

[1] This property was sold on September 1, 2022. *See* D.E., ¶ 35.

Plaintiffs to wire the funds to a Wells Fargo bank account held by AAA. *Id*. AAA was merely acting as the escrow agent of these funds - a regular and perfectly legitimate business service conducted by AAA in the normal course of their operations. *See* D.E. 1, ¶ 29. Between November 10, 2021, and January 7, 2022, Plaintiffs wired a total of €1,602,583.00 to AAA's Wells Fargo account. *See* D.E. 1, ¶ 30.

Plaintiffs allege AAA disbursed the funds to various entities to make payments for purchases of real estate other than the property described as 5421 Bayview Dr., Fort Lauderdale, FL 33308. *See* D.E. 1, ¶ 33, 34. One of these entities was Res Investment. *See* D.E. 1, ¶ 34. Between November 2021, and May 2022, AAA allegedly disbursed nearly $1,890,000.00 to Miami-Dade County, Windmill Title Real Estate, New Miami Realty Corp., Space Coast Credit Union, South Florida Title Union, and VA Leasing for the purchase of real property and other assets. *Id*. Several of these disbursements from AAA went toward the purchase of real property in Port St. Lucie, Florida on behalf of Res Investment. *Id*. Within six months of acquiring the Port St. Lucie property, Res Investment sold the Port St. Lucie property at a profit of $300,000.00. *See* D.E. 1, ¶ 35. "Upon information and belief", Plaintiffs infer, and allege - without further factual support that Tenord and Previlus formed Infinite Res to hold the proceeds of the sale of the Port St. Lucie property as a means to hinder or thwart their creditors. *See* D.E. 1, ¶ 36, 37.

### III.   LEGAL STANDARDS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); Fed. R. Civ. P. 12(b)(6). The factual allegations must be enough to raise a right to relief above the speculative level. *Id*. at 555, at 1965.

## IV.  ARGUMENT

The Complaint fails to allege even the most basic facts to show that that AAA, Res Investment, or Infinite Res were affirmatively aware of, much less architects of or in any way participated in, culpable conduct related to, Zaibet's real estate investment scheme as it related to Plaintiffs. As it pertains to AAA, Res Investment, and Infinite Res, Plaintiffs' Complaint only describes a series of events where AAA was retained by Zaibet in the normal course of business to provide financial services, and otherwise conducted unrelated transactions and disbursements perfectly appropriate for the normal course of the field of business in which they operated, and that Res Investment and Infinite Res were involved in such transactions, even one or more steps removed from the primary transactions at issue in this case. Further casting doubt as to the relatedness of the identified transactions as being part of the "scheme" alleged on the part of Zaibet is the fact that the amount of the series of these transactions identified *does not even match* the amount claimed as being purloined from the Plaintiffs. In fact, the amount claimed as being disbursed and "hidden" from the Plaintiffs is well in excess of the amount they claim was stolen. Plaintiffs' Complaint, at best, only describes a situation in which AAA was "duped" by Zaibet just as much as the Plaintiffs themselves, with the involvement of Res Investment, and Infinite Res as being normal and necessary corporate entities involved with legitimate business transactions of AAA. Plaintiffs' Complaint is utterly lacking in factual support – running afoul off *Twombly* - and instead relies upon innuendo, suggestion, and the impermissible stacking of inferences as it pertains to these claims against AAA, Res Investment, and Infinite Res.

> **A. Plaintiffs Fail to Plausibly Allege a Claim for Unjust Enrichment Against Defendants AAA, Infinite Res, and Res Investment (Count 4).**

A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Plaintiffs cannot state such claims against *any of the three entities* owned by Previlus and Tenord.

As to AAA, the only facts alleged by Plaintiffs are a series of wire transfers into this entity's Wells Fargo account, and an unrelated series of subsequent transactions making use of the same account. Plaintiffs' allegations make no factual mention of how any intentional scheme or artifice was concocted or executed *with any participation whatsoever* by AAA, or any indicia of knowledge, scienter, or intention on the part of AAA that would track the more specific allegations of same against Zaibet in characterizing such transactions as "unjust." In fact, Plaintiffs only describe a scenario where AAA followed instructions of a client in performing the legitimate financial business services for which they were retained. Ultimately, Plaintiffs fail to even allege what improper benefit AAA would have retained from Plaintiffs by virtue of the fact that funds passed through its Wells Fargo bank account, how AAA voluntarily accepted or retained such benefit, or why the circumstances are such that it would be inequitable for AAA to retain such a "benefit." Quite simply, Plaintiffs' factual allegations only amount to assertions that AAA "was acting as the 'Escrow Agent' for 'Florida Luxury Realty Corp'" – the remainder of the Complaint relies on innuendo, suggestions, and inadequate grounds for supporting its legal conclusions. *See* D.E. 1, ¶ 30. Assuming the actual facts set out in the Complaint are true, there is no indication that AAA retained any illegitimate benefit by serving as a passthrough of certain of Plaintiffs' funds. Plaintiffs' Count 4 against Defendant AAA should be dismissed.

Likewise, with respect to Res Investment, this entity purchased and sold a piece of real property in Port St. Lucie at a profit.  However, flowing downhill from the insufficient factual allegations against AAA, Plaintiffs' conclusory assertions that Res Investment benefitted from the use of Plaintiffs' funds to support this purchase are likewise wholly inadequate to support its bold claim. For example, Plaintiffs allege that on December 23, 2022, Defendants wired $300,000 from the AAA Wells Fargo bank account to an entity named "Space Coast Credit Union" in connection with the purchase of the Port St. Lucie property, on behalf of Res Investment. *See* D.E. 1, ¶ 34. However, there is again *no factual indication* from the Wells Fargo bank account or from the sale contract of the Port St. Lucie property that this $300,000 wire to Space Coast Credit Union had any relation to the funds wired to AAA's accounts by the Plaintiff, aside from an unreasonable inference that the "timing" of such transactions was somehow suspect, and other circumstantial "inferences" Plaintiffs have improperly drawn in order to present same as facts. Plaintiffs have failed to assert any benefit conferred on, or voluntarily received by this entity – much less why it would be inequitable for this entity to retain such a benefit. As pled, Count 4 should be dismissed against Res Investment.

The allegations regarding Infinite Res' "conduct" are yet even a step *further* removed from the alleged pilfering of Plaintiffs' funds conducted by Zaibet. Plaintiffs have artificially implicated this entity into this lawsuit without any indicia or factual support that *Plaintiffs actually conferred a benefit* upon this entity, much less that Infinite Res voluntarily accepted and retained any such benefit, or that it would be inequitable for this entity to retain any such "benefit." The only allegations with respect to Infinite Res are that it was formed around September 1, 2022, and the conclusory and unsupported suggestion it was a "shell-company with no legitimate business purpose other than to realize and/or hold the proceeds from the sale of the Port St. Lucie property"

as a means of thwarting and/or hindering creditors. *See* D.E. 1, ¶ 36. The preceding allegation states that Res Investment - *a company operated by real estate investors Previlus and Tenord* - sold a property in Port St. Lucie on September 1, 2022, *see* D.E. 1, ¶ 35, and that Infinite Res received the proceeds of that sale. How Plaintiffs then reach the conclusion that the funds received by Infinite Res – *a self-described alter ego of Previlus and Tenord themselves* – were a benefit conferred *by the Plaintiffs that was wrongfully retained* – is a non-sequitur, at best. There are no facts to support the allegations that the purchase of the Port St. Lucie property was in any way illegitimate, and thus it follows that the receipt of funds from the sale of such a property are not an inequitable benefit conferred upon Infinite Res. These allegations alone are woefully insufficient to state a cause of action for unjust enrichment against Infinite Res. Thus, Infinite Res must be dismissed from the action.

### B. Plaintiffs Fail to Plausibly Allege a Claim for Equitable Lien Against Defendant Res Investment (Count 13).

State law applies when determining whether an equitable lien should be imposed. *See*, e.g., *In re Fin. Federated Title & Tr., Inc.*, 347 F.3d 880, 886-87 (11th Cir. 2003) (applying Florida law). In Florida, an equitable lien may be awarded based on the "general consideration of right or justice as applied to the relations of the parties and the circumstances of their dealings in the particular case." *Jones v. Carpenter*, 90 Fla. 407, 106 So. 127, 129 (Fla. 1925). Equitable liens "are applied only in cases where the law fails to give relief and justice would suffer without" the imposition of a lien. *Id.* Likewise, under Florida law, "[a]n equitable lien must be specifically pled and proven." *In re Cameron*, 359 B.R. 818, 821–22 (Bankr. M.D. Fla. 2006).

Plaintiffs fail to allege sufficient facts to support their claim for an equitable lien as it relates to Res Investment. Plaintiffs' allegations are nothing more than bare recitations of the elements of fraud, supported by few, if any, facts. For example, Plaintiffs state, conclusively, that they "possess

a right to proceed against the…Port St. Lucie Properties…, since such properties and assets were purchased with the Plaintiffs' funds (due to fraud) – with the knowledge of the Defendants." *See* D.E. 1, 106. The Complaint contains no factual support sufficient to support the bare allegations that Plaintiffs' funds were actually used to purchase the property. Defendant Res Investment merely purchased a piece of property with funds from the Wells Fargo account owned by AAA. Without more specific allegations of fraudulent intent or knowledge, a purchase of real property is not unlawful or otherwise actionable. Notwithstanding, Plaintiffs seek an equitable lien against the Port St. Lucie property, which Plaintiffs concede Res Investment does not even own anymore as of September 1, 2022. *See* D.E. 1, ¶ 35. Claim 13 must be dismissed with respect to Res Investment as it is lacks adequate factual and legal support.

### C. Plaintiffs' Complaint Relies on Impermissible Inferences Grounded in Conjecture and Speculation.

Speaking generally, Florida law has an explicit, well-founded prohibition against the stacking of inferences "'unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.'" *Stanley v. Marceaux*, 991 So. 2d 938, 940 (Fla. 4th DCA 2008) (quoting *Nielsen v. City of Sarasota*, 117 So. 2d 731, 733 (Fla. 1960); *Cohen v. Arvin*, 878 So. 2d 403, 405 (Fla. 4th DCA 2004) (same); accord *Food Fair Stores v. Trusell*, 131 So. 2d 730, 733 (Fla. 1961) (stating that a party may not "indulg[e] in the prohibited mental gymnastics of constructing one inference upon another inference in a situation where . . . the initial inference was not justified to the exclusion of all other reasonable inferences").

While no such explicit traditional prohibition exists under the Federal Rules, inferences are still improper "if based merely upon conjecture or speculation." *Muller v. U.S. Postal Serv.*, 811 F. Supp. 325, 327 (N.D. Ohio 1992), *see also St. v. Nat'l Broad. Co.*, 512 F.Supp. 398, 409 (E.D.

Tenn. 1977*); Cecil Corley Motor Co., Inc. v. Gen. Motors Corp.,* 380 F.Supp. 819, 827 (M.D. Tenn. 1974).

As against AAA, Infinite Res, and Res Investment, Plaintiffs' Complaint relies almost exclusively on conjecture, innuendo, suggestions, speculation, and inferences based thereon; to the exclusion of straightforward or specific factual allegations. In short, Plaintiffs suggest that because AAA received money in the ordinary course of business, and also disbursed funds at the same time, (1) the funds were those received through Zaibet for an improper purpose, (2) that AAA was culpable for the same entire scope of the scheme described in detail against Zaibet (but not in such detail as against AAA),  (3) that several downstream entities (Infinite Res and Res Investment) are *also* culpable because they too were involved in business transactions around the same time, and (4) that AAA, Infinite Res, and Res Investments are all somehow in possession of Plaintiffs' allegedly purloined funds.

Notably absent from Plaintiffs' Complaint, is any specific factual allegations (1) outlining any specific actions taken by AAA, Infinite Res, or Res Investment that suggest even one affirmative step showing participation in, planning for, or knowledge of Zaibet's alleged schemes, (2) facts tending to *disprove* the reasonable inference that AAA, Infinite Res, or Res Investment were just operating under the normal course of business and were duped by Zaibet's sophisticated criminal artifice, or (3) factual allegations against these entities mirroring those alleged against Zaibet that are probative as to the above-described factors.

## CONCLUSION

Plaintiffs have failed to plausibly allege that Defendants Infinite Res, Res Investment, and AAA were unjustly enriched by Plaintiffs' funds. Therefore, these Defendants respectfully request that Count 4 be dismissed. With respect to Count 13, because Defendant Res Investment maintains

that Plaintiffs fail to state a claim for unjust enrichment, Plaintiffs are not entitled to an equitable lien against Defendant Res Investment's property. Thus, Count 13 must be dismissed. Finally, Plaintiffs' Complaint, on all counts against Defendants Infinite Res, Res Investment, and AAA, relies upon impermissible and unreasonable inferences in lieu of facts, and should be dismissed on that basis at a minimum.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of August, 2023 a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

Respectfully submitted,

**CONRAD & SCHERER, LLP**
633 S. Federal Hwy., Suite 800
Fort Lauderdale, Florida 33316
Telephone: (954) 462-5500
Facsimile: (954) 463-9244
Email: SOsber@conradscherer.com
JAdamsky@conradscherer.com
AThomas@conradscherer.com

By: */s/ Steven H. Osber*
Steven H. Osber
Florida Bar No. 86088
Jason Adamsky
Florida Bar No. 111326