dotloop signature verification: dtlp.us/qJN3-JrN3-KmtR

# "AS IS" Residential Contract For Sale And Purchase



**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

1\* **PARTIES:** LUXURY PROPERTIES TRUST ~~and ITEB ZAIBET~~ _____ ("Seller"),
2\* and _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5 and any riders and addenda ("Contract"):
6 **1. PROPERTY DESCRIPTION:**
7\*   (a) Street address, city, zip: 1100 Biscayne Blvd, 4401, Miami, FL 33132
8\*   (b) Located in: Miami-Dade County, Florida. Property Tax ID #: 0132310700310
9\*   (c) Real Property: The legal description is MARQUIS CONDO UNIT 4401 UNDIV 0.39092954% INT IN COMMON
10      ELEMENTS OFF REC 26920-3495
11
12      together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13      attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14      by other terms of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16      which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17      purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18      and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s), doorbell(s),
19      television wall mount(s) and television mounting hardware, security gate and other access devices, mailbox
20      keys, and storm shutters/storm protection items and hardware ("Personal Property").
21\*     Other Personal Property items included in this purchase are: Dishwasher, Disposal, Dryer, Microwave, Electric
22      Range, Refrigerator, Smoke Detector, Wall Oven, Washer. Blinds/Shades. ~~FURNISHED (Inventory)~~
23      Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24\*  (e) The following items are excluded from the purchase: _____
25      _____

## PURCHASE PRICE AND CLOSING

27\* **2. PURCHASE PRICE** (U.S. currency): .................................................................... $1,500,000.00
28\*   (a) Initial deposit to be held in escrow in the amount of (**checks subject to Collection**) ............ $40,000.00
29      The initial deposit made payable and delivered to "Escrow Agent" named below
30\*     **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☑ is to be made within  3  (if left blank,
31      then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
32      SHALL BE DEEMED SELECTED.
33\*     Escrow Agent Name: Unlimited Real Estate Corp
34\*     Address: 760 NW 107 Ave Suite 330 Miami FL 33172         Phone: 305 330 5004
35\*     Email:             gplotnick@myunlimitedre.com           Fax:
36\*  (b) Additional deposit to be delivered to Escrow Agent within    7    (if left blank, then 10)
37\*     days after Effective Date ............................................................................. $40,000.00
38      (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39\*  (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........
40\*  (d) Other: _____ $
41   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42\*     transfer or other Collected funds (See STANDARD S) ................................................ $Balance
43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45\*     08/18/2023                    , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46      Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47      the counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49      initialed and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51   received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52   furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

53*     this Contract, the Closing shall occur on <u>or before 21 days *from effective date*</u> ("Closing Date"), at the time
54     established by the Closing Agent.
55   **5. EXTENSION OF CLOSING DATE:**
56     (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57         Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58         checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59         extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60         days.
61     (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62         unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63         extended as provided in STANDARD G.
64   **6. OCCUPANCY AND POSSESSION:**
65     (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66         to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67         personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68         codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69         to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70         shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71         CLOSING OCCUPANCY BY BUYER.
72     (b) ☑ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73         subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74         Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75         shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76         within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77         occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78         election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79         Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80         and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81         be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82         Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.
83*   **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84*     this Contract; ☑ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.
85     IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

**FINANCING**

87   **8. FINANCING:**
88*     ☑ (a) This is a cash transaction with no financing contingency.
89*     ☐ (b) This Contract is contingent upon, within _____ (if left blank, then 30) days after Effective Date ("Loan
90*     Approval Period"): (1) Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____
91*     (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or
92*     adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93*     blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30)
94     years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95     of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96     for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").
97*       (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98     and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99     Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100    Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101    unless Rider V is attached.

102    Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103    be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104    but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105    and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.

106       (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107    mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108    of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

dotloop signature verification: dtlp.us/qjN3-jrN3-KmtR-

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.
111 (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.
115 (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.
120 (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.
126 (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.
132 ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133 ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134 **CLOSING COSTS, FEES AND CHARGES**
135 9. **CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
136 (a) **COSTS TO BE PAID BY SELLER:**
137 • Documentary stamp taxes and surtax on deed, if any • HOA/Condominium Association estoppel fees
138 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked) • Recording and other fees needed to cure title
139 • Title search charges (if Paragraph 9(c)(iii) is checked) • Seller's attorneys' fees
140 • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked) • Other: **Processing fee of $395 to RGI Realty**
141 • Charges for FIRPTA withholding and reporting
142 If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11,
143 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
146 (b) **COSTS TO BE PAID BY BUYER:**
147 • Taxes and recording fees on notes and mortgages • Loan expenses
148 • Recording fees for deed and financing statements • Appraisal fees
149 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked) • Buyer's Inspections
150 • Survey (and elevation certification, if required) • Buyer's attorneys' fees
151 • Lender's title policy and endorsements • All property related insurance
152 • HOA/Condominium Association application/transfer fees • Owner's Policy Premium (if Paragraph
153 • Municipal lien search (if Paragraph 9(c)(ii) is checked)   9(c)(iii) is checked)
154 • Other:
155 (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
156 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160 Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a

dotloop signature verification: dtlp.us/qJN3-JrN3-KmtR

search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency.
**(CHECK ONE):**
☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the premium for Buyer's lender's policy and charges for closing services related to the lender's policy, endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select; or
☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements and loan closing; or
☑ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☑ N/A shall pay for a home warranty plan issued by _____ at a cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in installments **(CHECK ONE):**
☑ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.
☐ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be deemed selected for such assessment(s).
IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

**DISCLOSURES**

**10. DISCLOSURES:**
(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.
(b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79, F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.
(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.
(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"

dotloop signature verification: dtlp.us/qJN3-JrN3-KmtR

221 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225* may terminate this Contract by delivering written notice to Seller within ____ (if left blank, then 20) days after
226 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228 designation of Property.
229 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230 required by Section 553.996, F.S.
231 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232 mandatory.
233 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
235 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**
236 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
242 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249 FIRPTA.
250 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251 not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252 sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253 implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254 has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255 building, environmental or safety code violation.

256 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259 IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
261* (a) ***PROPERTY INSPECTIONS AND RIGHT TO CANCEL:** Buyer shall have ___7___ (if left blank, then 15)*
262 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265 *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266 *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267 *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268 *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269 *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270 *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271 *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272 *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273 *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274 *repairs and improvements required by Buyer's lender.*



Buyer's Initials [ZY 08/16/23] [____] Page 5 of 13 Seller's Initials [LP 08/16/23 02:54 PM EDT] [____]
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

Package ID: 62698D4B37F733A97EAB20BAAE6C1D30

dotloop signature verification: dtlp.us/qJN3-JrN3-KmtR

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

## ESCROW AGENT AND BROKER

13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.
    In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

14. **PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

dotloop signature verification: dtlp.us/qJN3-jrN3-KmtR

Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

**DEFAULT AND DISPUTE RESOLUTION**

**15. DEFAULT:**
   (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
   (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.
This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:
   (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).
   (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

**18. STANDARDS:**
   **A. TITLE:**
   (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

dotloop signature verification: dtlp.us/qJN3-JrN3-KmtR

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

386  (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
387  in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
388  delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
389  receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
390  receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
391  shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
392  written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
393  Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
394  Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,
395  deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
396  Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
397  (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
398  passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
399  electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
400  further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and
401  Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
402  thereby releasing Buyer and Seller from all further obligations under this Contract.
403  **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
404  encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
405  governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
406  such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
407  than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
408  Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
409  prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
410  preparation of such prior survey, to the extent the affirmations therein are true and correct.
411  **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
412  the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
413  **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
414  tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
415  deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
416  the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
417  and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
418  Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
419  6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
420  within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
421  Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
422  this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
423  thereunder.
424  **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
425  statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
426  repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
427  improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
428  general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
429  names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
430  for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
431  paid or will be paid at Closing.
432  **F. TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall
433  be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3,
434  any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or
435  inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5
436  U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or
437  Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a
438  day on which a national legal public holiday is observed.
439  **G. FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under
440  this Contract or be liable to each other for damages so long as performance or non-performance of the right or
441  obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

dotloop signature verification: dtlp.us/qJN3-jrN3-KmtR

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents performance, non-performance, or the availability of services, insurance or required approvals essential to Closing. All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however, if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
(i) **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance and will take place in the county where the Real Property is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic means.
(ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable, the survey, flood elevation certification, and documents required by Buyer's lender.
(iii) **FinCEN GTO REPORTING OBLIGATION.** If Closing Agent is required to comply with a U.S. Treasury Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial Owners, including photo identification, and related to the transaction contemplated by this Contract which are required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to Closing Agent's collection and report of said information to IRS.
(iv) **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

dotloop signature verification: dtlp.us/qjN3-jrN3-KmtR

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

499 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
500 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
501 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
502 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
503 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
504 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
505 maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
506 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
507 shall survive Closing.

508 **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
509 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
510 including a walk-through (or follow-up walk-through if necessary) prior to Closing.

511 **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
512 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
513 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
514 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
515 cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
516 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
517 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
518 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5% or receive a refund of the
519 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
520 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

521 **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
522 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
523 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
524 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
525 upon, nor extended or delayed by, such Exchange.

526 **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT
527 EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This
528 Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in
529 interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and
530 delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party
531 shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail,
532 facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures
533 hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic
534 signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

535 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
536 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
537 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
538 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
539 to be bound by it.

540 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
541 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
542 rights.

543 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
544 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

545 **S. COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including
546 Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing
547 Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent
548 until such amounts have been Collected in Closing Agent's accounts.

549 **T. RESERVED.**

550 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
551 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
552 county where the Real Property is located.

553 **V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
554 Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
555 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

Buyer's Initials [ 08/16/23 dotloop verified ] [ ]    Page 10 of 13    Seller's Initials [ 08/16/23 02:56 PM EDT ] [ ]

FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

Package ID: 62698D4B37E733A97EAB20BAAE6C1D30

dotloop signature verification: dtlp.us/qIN3-jrN3-KmtR

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

556  (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557  from the IRS authorizing a reduced amount of withholding.
558  (i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559  provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560  stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561  home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562  shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563  to the IRS.
564  (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565  or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566  reduced sum required, if any, and timely remit said funds to the IRS.
567  (iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568  provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569  received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
570  on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571  escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572  parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573  directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574  (iv)  In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575  transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576  applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577  disbursement in accordance with the final determination of the IRS, as applicable.
578  (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579  8288 and 8288-A, as filed.
580  **W. RESERVED**
581  **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
582  *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
583  *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
584  *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
585  *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
586  *Closing.*

587  **ADDENDA AND ADDITIONAL TERMS**

588* **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
589  Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☑ A. Condominium Rider | ☐ M. Defective Drywall | ☐ X. Kick-out Clause |
| ☐ B. Homeowners' Assn. | ☐ N. Coastal Construction Control Line | ☐ Y. Seller's Attorney Approval |
| ☐ C. Seller Financing | | ☐ Z. Buyer's Attorney Approval |
| ☐ D. Mortgage Assumption | ☐ O. Insulation Disclosure | ☐ AA. Licensee Property Interest |
| ☐ E. FHA/VA Financing | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ BB. Binding Arbitration |
| ☐ F. Appraisal Contingency | ☐ Q. Housing for Older Persons | ☐ CC. Miami-Dade County Special Taxing District Disclosure |
| ☐ G. Short Sale | ☐ R. Rezoning | |
| ☐ H. Homeowners/Flood Ins. | ☐ S. Lease Purchase/ Lease Option | |
| ☐ I. RESERVED | ☐ T. Pre-Closing Occupancy | ☐ DD. Seasonal/Vacation Rentals |
| ☐ J. Interest-Bearing Acct | ☐ U. Post-Closing Occupancy | ☐ EE. PACE Disclosure |
| ☐ K. RESERVED | ☐ V. Sale of Buyer's Property | ☑ Other: seller's disclosure |
| ☐ L. RESERVED | ☐ W. Back-up Contract | |

Buyer's Initials [08/16/23] _____   Page 11 of 13   Seller's Initials [08/16/23 02:06 PM EDT] _____
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.
dotloop verified

Package ID: 62698D4B37F733A97EAB20BAAE6C1D30

dotloop signature verification: dtlp.us/qJN3-JrN3-KmtR

590* **20. ADDITIONAL TERMS:** Seller shall close any open and expired permit and/or code violation before closing date. *as it relates to this particular*
591  Buyer shall pay $395 for processing fee to Unlimited Real Estate at Closing. *unit.*
592
593
594
595
596
597
598
599
600
601
602
603
604
605
606
607

608                              **COUNTER-OFFER**
609* ☐ Seller counters Buyer's offer.

610              **[The remainder of this page is intentionally left blank.**
611              **This Contract continues with Line 612 on Page 13 of 13.]**

Buyer's Initials _____  Page **12** of **13**  Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

Package ID: 62698D4B37E733A97EAB20BAAE6C1D30

dotloop signature verification: dtlp.us/qJN3-jrN3-KmtR

612  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
613  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

614  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

615  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
616  *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
617  *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
618  *interested persons.*

619  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
620  TO BE COMPLETED.

621  **ATTENTION: SELLER AND BUYER**

622  **CONVEYANCES TO FOREIGN BUYERS:** Part III of Chapter 692, Sections 692.201 - 692.205, Florida Statutes,
623  2023 (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by
624  certain buyers who are associated with a "foreign country of concern", namely: the People's Republic of China, the
625  Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of
626  Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. **It is a crime to buy or knowingly**
627  **sell property in violation of the Act.**

628  **At time of purchase, Buyer must provide a signed Affidavit which complies with the requirements of the**
629  **Act.** Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under
630  the Act.

631*  Buyer: _____  Date: _____
632*  Buyer: _____  Date: _____
633*  Seller: _____  Date: _____
634*  Seller: _____  Date: _____

635  Buyer's address for purposes of notice     Seller's address for purposes of notice
636* _____  _____
637* _____  _____
638* _____  _____

639  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
640  entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
641  Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
642  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
643  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
644  made by Seller or Listing Broker to Cooperating Brokers.

645*  Jorge Andrade                              Giovanna Ingletto Amaral
646  **Cooperating Sales Associate, if any**    **Listing Sales Associate**
647*  Unlimited Real Estate Corp.   - 3%         RGI Realty   - 3%
648  **Cooperating Broker, if any**             **Listing Broker**

Buyer's Initials ____ 08/16/23 ____   Page **13** of **13**   Seller's Initials ____ 08/16/23 ____
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

Package ID: 62698D4B37F733A97EAB20BAAE6C1D30

dotloop signature verification: dtlp.us/qjN3-JrN3-KmtR

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



**If initialed by all parties**, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract For Sale And Purchase between LUXURY PROPERTIES TRUST and ITEB ZAIBET _____ (SELLER)
and _____ (BUYER)
concerning the Property described as 1100 Biscayne Blvd, 4401, Miami, FL 33132
MARQUIS CONDO UNIT 4401 UNDIV 0.39092954% INT IN COMMON    ELEMENTS OFF REC 26920-3495

**Buyer's Initials** [✓] [ ]     **Seller's Initials** [✓] [ ]

### A. CONDOMINIUM RIDER

1. **CONDOMINIUM ASSOCIATION APPROVAL:**
   The Association's approval of Buyer (**CHECK ONE**): ☑ is ☐ is not required. If approval is required, this Contract is contingent upon Buyer being approved by the Association no later than _____ (if left blank, then 5) days prior to Closing. Within _____ (if left blank, then 5) days after Effective Date Seller shall initiate the approval process with the Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver any documents required by the Association in order to complete the transfer of the Property and each shall use diligent effort to obtain such approval, including making personal appearances if required. If Buyer is not approved within the stated time period, this Contract shall terminate and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2. **RIGHT OF FIRST REFUSAL:**
   (a) The Association (**CHECK ONE**): ☑ has ☐ does not have a right of first refusal ("Right"). If the Association has a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference includes all amendments thereto).
   (b) The members of the Association (**CHECK ONE**): ☐ have ☑ do not have a Right. If the members do have a Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the members are not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration.
   (c) Buyer and Seller shall, within _____ (if left blank, then 5) days after Effective Date, sign and deliver any documents required as a condition precedent to the exercise of the Right, and shall use diligent effort to submit and process the matter with the Association and members, including personal appearances, if required.
   (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the written confirmation or the Right has not otherwise expired, then this Contract shall terminate and the Deposit shall be refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   (e) If the Association or a member timely exercises its or their Right, this Contract shall terminate and the Deposit shall be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all further obligations under this Contract, and Seller shall pay to Broker the full commission at Closing in recognition that Broker procured the sale.

3. **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
   (a) Condominium Association assessment(s) and Rents: Seller represents that the current Association assessment(s) installments is/are

   $2,242.00 _____ payable (**CHECK ONE**): ☑ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and if more than one Association assessment
   $ _____ payable (**CHECK ONE**): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and the current rent on recreation areas, if any, is
   $ _____ payable (**CHECK ONE**): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

dotloop signature verification: dtlp.us/qJN3-jrN3-KmtR

## A. CONDOMINIUM RIDER (CONTINUED)

All annual assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at Closing, and Buyer shall reimburse Seller for prepayments.

(b) **Fees:** Seller shall, at Closing, pay all fines imposed against the Unit by the Condominium Association as of Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

*If Property is part of a Homeowners' Association, see Rider B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE for further information including additional assessments and fees.*

(c) **Special Assessments and Prorations:**
  (i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows:_____

  (ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (**CHECK ONE**): ☑ Buyer ☑ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**

  (iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

  (iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller shall pay all amounts due before Closing Date and Buyer shall pay all amounts due after Closing Date.

  (v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 5.

  (vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) **Litigation:** Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows:_____

4. **SPRINKLER SYSTEM RETROFIT:**
If, pursuant to Sections 718.112(2)(n), F.S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

5. **NON-DEVELOPER DISCLOSURE:**
(**CHECK ONE**):

☑ (a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.

☑ (b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND

dotloop signature verification: dtlp.us/qIN3-jrN3-KmtR

LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

6. **BUYER'S REQUEST FOR DOCUMENTS:**
Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer (**CHECK ONE**): ☑ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

7. **BUYER'S RECEIPT OF DOCUMENTS:**
(**COMPLETE AND CHECK ONLY IF CORRECT**) ☑ Buyer received the documents described in Paragraph 5, above, on _Aug 16, 2023_.

8. **COMMON ELEMENTS; PARKING:**
The Property includes the unit being purchased and an undivided interest in the common elements and appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
Parking Space(s) # _____ Garage # _____ Other: _1 parking space #6-32 ; 1 storage unit #4401_

9. **INSPECTIONS AND REPAIRS:**
The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

10. **GOVERNANCE FORM; MILESTONE INSPECTION REPORT; STRUCTURAL INTEGRITY RESERVE STUDY:**
    (a) GOVERNANCE FORM: Pursuant to Chapter 718, F.S., Buyer is entitled to receive from Seller a copy of the governance form in the format provided by the Division of Florida Condominiums, Timeshares and Mobile Homes of the Department of Business and Professional Regulation, summarizing governance of condominium associations.

    (b) MILESTONE INSPECTION REPORT SUMMARY: Pursuant to Section 718.503(2)(a)5, F.S., Buyer who has entered into this Contract is entitled, at Seller's expense, to receive from Seller, before the sale of the Property, a copy of the inspector-prepared summary of the milestone inspection report, as described in Sections 553.899 and 718.301(4)(p), Florida Statutes, if (1) applicable and (2) the summary has been submitted to the Association.

    (c) STRUCTURAL INTEGRITY RESERVE STUDY: Pursuant to Section 718.503(2)(a)6, F.S., Buyer who has entered into this Contract is entitled, at Seller's expense, to receive from Seller, before the sale of the Property, a copy of the Association's most recent structural integrity reserve study or a statement that the Association has not completed a structural integrity reserve study.

dotloop signature verification: dtlp.us/VSI7-EJ0Y-2OnH



# Addendum to Contract

Addendum No. __1__ to the Contract with the Effective Date of __Aug 16, 2023__ between

__LUXURY PROPERTIES TRUST__ / _____ (Seller)

and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ / _____ (Buyer)

concerning the property described as: __1100 Biscayne Blvd #4401, Miami, FL 33132__

(the "Contract"). Seller and Buyer make the following terms and conditions part of the Contract:

*Seller and Buyer agree that closing date shall be on or before September 29, 2023.*

*All other terms and conditions in the contract remain the same.*


Buyer: ▮▮▮▮▮▮▮▮▮▮▮▮    dotloop verified
                        09/01/23 5:37 PM EDT
                        TK1K-SVU9-YTXF-SSRJ

Buyer: _____    Date: _____

Seller: __[signed 08/31/23 12:44 PM EDT]__    Date: __Aug 31, 2023__

Seller: _____    Date: _____

ACSP-4   Rev 6/17
Licensed to BROKERMINT LLC and Giovanna Ingletto Amaral

© 2017 Florida \Realtors®

Package ID: 4B8A8038282EAC348B61275C092B0E18