UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 23-cv-22276-BLOOM/Otazo-Reyes**

PATRICK MULLER and
MOUNA BOUZID,

      Plaintiffs,

v.

ITEB ZAIBET, *et al.*,

      Defendants.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATIONS**

**THIS CAUSE** is before the Court upon Plaintiffs Patrick Muller and Mouna Bouzid's ("Plaintiffs") Objection to Magistrate Judge's Report and Recommendation recommending that Defendant Luxury Property Trust's ("Defendant Trust") Motion to Dissolve *Lis Pendens* be granted, ECF No. [89] ("Objection"). Defendant Trust filed a Response in Opposition to Plaintiffs' Objection, ECF No. [91] ("Response"). The Court has carefully reviewed the Magistrate Judge's Report and Recommendation, ECF No. [84], the Objection and Response, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Objection is overruled, and the Court adopts the Report and Recommendation.

    **I.    Background**

Plaintiffs initiated this action on June 20, 2023. ECF No. [1]. Plaintiffs' Complaint alleges various claims against Defendants. The Complaint generally alleges that Plaintiffs are victims of an international investment and real estate scheme involving Defendants, most notably Defendants Iteb Zaibet and Lolita C. Rebulard ("Principal Defendants"). Count XIII of the Complaint seeks

the imposition of an equitable lien over various properties and a vehicle. Plaintiffs allege that these assets "were purchased with the Plaintiffs' funds (due to fraud) – with the knowledge of the Defendants." ECF No. [1] at 25.

Plaintiffs filed Notices of *Lis Pendens*, ECF Nos. [13]-[14], predicated on their claim for imposition of equitable liens over two of the properties referenced in Count XIII, namely Unit 2501 located at 888 Biscayne Boulevard, Miami, Florida ("2501 Property") and Unit 4401 located at 1100 Biscayne Boulevard, Miami, Florida ("4401 Property"). *See* ECF No. [1] ¶¶ 33-34, 105-107. Plaintiffs thereafter filed an Amended Notice of *Lis Pendens*, ECF No. [47], that corrects an error in the 2501 Property's legal description.

Defendant Trust filed a Motion to Dissolve *Lis Pendens* ("Motion") on June 30, 2023.[1] ECF No. [21]. Defendant Trust's Motion requests that the Court discharge the Notices of *Lis Pendens* on the 2501 Property and the 4401 Property ("Properties") because the Properties are not properly subject to *lis pendens*. Defendant Trust's Motion argues that Count XIII of the Complaint fails to comply with the requirements of § 48.23 of Florida Statutes, the provision governing *lis pendens*. § 48.23 of Florida Statutes provides in part:

> An action in any of the state or federal courts in this state operates as a lis pendens on any real or personal property involved therein or to be affected thereby only if a notice of lis pendens is recorded in the official records of the county where the property is located and such notice has not expired pursuant to subsection (2) or been withdrawn or discharged.

Defendant Trust argues that the Notices of *Lis Pendens* should accordingly be dissolved because Plaintiffs' Complaint fails to allege a recorded lien against the Property. Moreover, Defendant Trust contends that the Court should not order *lis pendens* on the Properties because

---

[1] Plaintiffs request that the Court impose *lis pendens* as prejudgment equitable liens on the Properties. The Court accordingly interprets Defendant's Motion as requesting that the Court deny this relief and discharge Plaintiff's Notices of *Lis Pendens*, ECF Nos. [14], [47].

this is an action for money damages, and because Plaintiffs fail to show a fair nexus between their claim to equitable ownership of the Properties and the Properties themselves.

Plaintiffs' respond that Defendant Trust's Motion should be denied because they have established a fair nexus between the Properties and their claim of equitable ownership. Plaintiffs argue that a fair nexus is established because the Complaint alleges that Principal Defendants made false statements to Plaintiffs regarding the use of Plaintiffs' funds to acquire the 2501 Property, that those false statements induced Plaintiffs to transfer funds to Principal Defendants, who then diverted part of these funds to Defendant Trust for the property taxes and maintenance costs of the 2501 Property and to acquire the 4401 Property. Plaintiffs contend that those allegations establish a fair nexus between their equitable ownership claim and the Properties, and the Motion should accordingly be denied. Defendant Trust replies that Plaintiff's recitation of the allegations in their Complaint fails to meet Plaintiffs' obligation to make a minimal showing justifying *lis pendens* on the Properties. Defendant Trust argues that none of the evidence Plaintiffs proffer establishes a fair nexus between the Properties and Plaintiffs' claim.

On August 24, 2023, the Court referred the Motion, among others, to Magistrate Judge Alicia Otazo-Reyes for a Report and Recommendation ("R&R"). ECF No. [68]. Judge Otazo-Reyes conducted an evidentiary hearing on the Motion on September 6, 2023. ECF No. [76].

### A. R&R

In her analysis, Magistrate Judge Otazo-Reyes concluded that Plaintiffs failed to show that the Properties are properly subject to a *lis pendens* under Florida law. Judge Otazo-Reyes correctly recognized that § 48.23 Florida Statues governs *lis pendens* and noted that § 48.23(3) provides that "the court shall control and discharge the recorded notice of lis pendens as the court would grant and dissolve injunctions." R&R at 3 (quoting Fla. Stat. Ann. § 48.23(3)). To avoid discharge, Judge

Otazo-Reyes explained that Plaintiffs must "show a fair nexus between the property and the dispute." *Id.* (quoting *Med. Facilities Develop, Inc. v. Little Arch Creek Props., Inc.*, 675 So. 2d 915, 917 (Fla. 1996)). This showing requires a "good faith, viable claim[.]" *Id.* (quoting *Blue Star Palms, LLC v. LED Trust, LLC*, 128 So. 3d 36, 38 (Fla. 3d DCA 2012)). Judge Otazo-Reyes observed that Plaintiffs rely on "their equitable lien claim" to support *lis pendens* on the Properties and accordingly proceeded to analyze whether Plaintiffs have shown a fair nexus between the Properties and the dispute.

### 1. 2501 Property

Judge Otazo-Reyes began her analysis of the 2501 Property by noting that "[i]t is undisputed that [Defendant] purchased the 2501 Property in 2018, well before Plaintiffs' alleged relationship with the Principal Defendants began in 2020." *Id.* (citing Warranty Deed, ECF No. 21-3], ECF No. [1] ¶¶ 22-23). Judge Otazo-Reyes accordingly found that "Plaintiffs cannot support their allegation in Count XIII of the Verified Complaint that their funds were used to purchase the 2501 Property." R&R at 3.

Judge Otazo-Reyes then moved to Plaintiffs' second basis for *lis pendens*, namely, that Principal Defendants "and/or Defendant Trust" used "an unknown sum" of the allegedly fraudulently obtained funds "to pay the 2021 Miami-Dade County Real Estate Taxes and maintenance costs associated" with the 2501 Property. *Id.* (citing ECF No. [1] at 11). Judge Otazo-Reyes reviewed the documentation Plaintiffs provided to support their claim, a "certified translation of an email sent by [Defendant] Rebulard on April 29, 2020, that talks about borrowing money from Plaintiffs to pay some taxes." *Id.* at 4 (citing ECF No. [78] at 7-8). Judge Otazo-Reyes found that "this proffer was too vague to establish a fair nexus between the 2501 Property and the dispute" because this email fails to show that "any money was actually paid by Plaintiffs[.]" *Id.*

Judge Otazo-Reyes concluded that Plaintiffs failed to show they have a "good faith viable claim" against the 2501 Property, and the Notice of *Lis Pendens* on the 2501 Property should accordingly be discharged. *Id.* (citing Fla. Stat. Ann. § 48.23(3); *Med. Facilities*, 675 So. 2d at 917).

### 2. 4401 Property

Judge Otazo-Reyes then evaluated whether a fair nexus exists regarding the 4401 Property. In support of their claim, Plaintiffs' "proffered a sales contract for the 4401 Property, dated December 9, 2021, showing the [Defendant] Trust as buyer" and "bank account statements for Defendant AAA Plus Financial Group, Inc. … showing wire transfers from [Plaintiff] Muller." *Id.* (citing ECF Nos. [1-4] at 3-4, [1-5]). Plaintiffs also attempted to trace Plaintiff Muller's funds to the purchase of the 4401 Property after the evidentiary hearing Judge Otazo-Reyes conducted on the Motion. *Id.* at 4-5. Judge Otazo-Reyes found that Plaintiffs proffered evidence failed to trace the funds to the Property because "(1) funds have not been traced from AAA to the originator of the Wire Transfers, Martha L. Mendez, P.A.; (2) the amounts shown on the Wire Transfers do not match the amounts shown on the AAA Statements (3) the 4401 Property is not mentioned on the Wire Transfers." *Id.* at 5. Judge Otazo-Reyes concluded that Plaintiffs' proffer purporting to establish a fair nexus between their claims and the 4401 Property "is too vague[,]" and that Plaintiffs have therefore failed to show "that they have a good faith claim for the imposition of an equitable lien on the 4401 Property[.]" *Id.* Judge Otazo-Reyes accordingly recommended that the Notice of *Lis Pendens* on the 4401 Property should also be discharged. *Id.* (citing Fla. Stat. § 48.23(3); *Med. Facilities*, 675 So. 2d at 917).

Judge Otazo-Reyes recommended that the Court grant the Motion and discharge the Notices of *Lis Pendens*. Alternatively, Judge-Otazo Reyes recommended that Plaintiffs be required

5

to post a bond in the amount of $311,454.55, representing one year of default interest for the 4401 Property.[2] *Id.* n. 3.

### B. Plaintiffs' Objections

On October 10, 2023, Plaintiffs filed an untimely Objection to Judge Otazo-Reyes's R&R.[3] Plaintiffs contend that Judge Otazo-Reyes erred in misconstruing established law and in interpreting the documentation Plaintiffs offered to support their claims. Plaintiffs assert that Judge Otazo-Reyes erred as a matter of law in finding that Plaintiffs' fail to show a fair nexus between the dispute and the Properties. Plaintiffs argue that Judge Otazo-Reyes specifically erred in concluding that Plaintiffs proffered evidence fails to establish "a minimal showing" of a fair nexus between the dispute and the Properties and that "it is impracticable" to require Plaintiffs "to fully prove each element of [their] claim in an evidentiary hearing where the case has not been noticed for trial and the parties may not have even completed the discovery." Objection at 8 (citing *Conseco Servs., LLC v. Cuneo*, 904 So. 2d 438, 439 (Fla. 3d DCA 2005).[4]

Regarding the 2501 Property, Plaintiffs contend a fair nexus is established by bank statements reflecting that "each time money intended as Plaintiffs' investment in the First Property hit the AAA bank account, such funds were immediately diverted for unintended or agreed upon purposes by the Defendants, including for the benefit of [Defendant] Trust, who used such fraudulently obtained funds to maintain the 2501 Property and to acquire the 4401 Property, all

---

[2] Defendant Trust alternatively requested that Plaintiffs be required to post a bond if the Court determines that Properties are properly subject to *lis pendens*. Judge Otazo-Reyes recommended the lesser of the two amounts suggested by Defendant Trust as appropriate for any such bond.

[3] The Court granted Plaintiffs' Motion for Extension of Time to file an Objection to the R&R on or before October 9, 2023. ECF No. [88]. Plaintiffs filed their Objection to the R&R on October 10, 2023. ECF No. [89]. Although this untimely objection can bar Plaintiffs' from attacking the R&R's factual findings, the Court will nonetheless consider the merits of Plaintiffs' legal and factual objections. *See Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

without Plaintiffs' knowledge or consent." Objection at 10. Plaintiffs also maintain that their proffered evidence "further demonstrate[s] how Plaintiffs' intended investment in the First Property was instead transferred from the AAA bank account to, in part, unlawfully acquire the 4401 Property by [Defendant] Trust and to pay property taxes on the 2501 Property." *Id.* (citing ECF No. [78] at 7-8).

Regarding the 4401 Property, Plaintiffs contend that their proffered evidence shows Plaintiffs' money was "unlawfully diverted by the Defendants and [is] directly traceable to the [Defendant] Trust's acquisition of the 4401 Property." Objection at 11. Plaintiffs further argue that "because it is undisputed that Plaintiffs' money was fraudulently obtained by the Defendants and directly tied to [Defendant] Trust's acquisition of the 4401 Property, Plaintiffs have made the minimal showing that there is at least some basis for their underlying claims and demonstrated their entitlement to the imposition of an equitable lien and constructive trust on the subject properties as a matter of law." *Id.*

### C.  Defendant's Response

Defendant Trust responds that Plaintiffs fail to show that Judge Otazo-Reyes erred in finding that Plaintiffs failed to show a fair nexus between the dispute and the Properties. Defendant Trust argues that Plaintiffs' equitable lien theory requires a showing that the dispute features "fraud or other misrepresentations involving the property subject to the lis pendens." Response at 4 (quoting *Frank v. Ocean 4660, LLC*, 2011 WL 5082137 at *3 (S.D. Fla. October 26, 2011)). Regarding the 2501 Property, Defendant Trust argues that Judge Otazo-Reyes correctly observed that Plaintiffs' "have no legal or equitable ownership in the 2501 Property" as it was purchased in 2018, before the events giving rise to the dispute in 2020. *Id.* at 2. Regarding the 4401 Property, Defendants contend that Judge Otazo-Reyes accurately found that Plaintiffs' proffer fails to show

that unlawfully obtained funds were diverted to purchase or maintain the 4401 Property. *Id.* Moreover, Defendant argues that the Notices of *Lis Pendens* should be discharged on both Properties because Plaintiffs' claim for equitable relief is unsupported by allegations that Defendant was in any way "involved" in the allegedly fraudulent scheme. *Id.* at 4.

## II. Legal Standard

### A. Report and Recommendation

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989) (alterations omitted)). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J. R. 4(b). The portions of the report and recommendation to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

### B. Lis Pendens

§ 48.23 of Florida Statutes provides:

> An action in any of the state or federal courts in this state operates as a lis pendens on any real or personal property involved therein or

>to be affected thereby only if a notice of lis pendens is recorded in the official records of the county where the property is located and such notice has not expired pursuant to subsection (2) or been withdrawn or discharged.

Fla. Stat. § 48.23(1)(a); *see also Axos Clearing, LLC v. Reynolds*, No. 1:19-CV-20979-KMM, 2019 WL 2082551, at *2 (S.D. Fla. May 9, 2019) (citing Fla. Stat. § 48.23). A notice of *lis pendens* on a property provides notice that the property is subject to a pending suit involving the property's title. *Beefy King Int'l, Inc. v. Veigle*, 464 F.2d 1102, 1104 (5th Cir. 1972).[5] Among other purposes, the notice protects the notice's proponent from intervening liens that could impair his or her claimed property rights in the property and from possible extinguishment of the plaintiff's unrecorded equitable lien. *See Med. Facilities Dev., Inc.* 675 So. 2d at 917 (citing *Chiusolo* 614 So. 2d at 492).

Federal courts may discharge a notice of *lis pendens* "when the pending pleading does not show that the action is founded on a duly recorded instrument," or when the action does not specifically or directly affect the subject property. *Axos Clearing*, 2019 WL 2082551, at *2 (quoting Fla. Stat. Ann. § 48.23(3)). In the latter case, a *lis pendens* is proper *only* when the required relief might specifically affect the property in question. *Pushko v. Klebener*, No. 3:05-cv-211-J-25HTS, 2006 WL 7994718, at *1 (citing *Beefy King*, 464 F.2d at 1104). To show that the required relief might specifically affect a property, the proponent must establish a "fair nexus" between the proponent's "apparent legal or equitable ownership of the property" and "the dispute embodied in the lawsuit." *Chiusolo*, 614 So. 2d at 492; *see also Med. Facilities Dev., Inc.* 675 So. 2d at 918 ("[t]he proponent of a notice of lis pendens has the burden of proof to show a fair nexus between the property and the dispute."). "'When the initial pleading does not show that the action

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the court adopted as binding precedent all decisions of the Fifth Circuit issued prior to October 1, 1981.

is founded on a duly recorded instrument, or on a mechanic's lien, the court may control and discharge the notice of lis pendens as the court may grant and dissolve injunctions,' that is, within its broad discretion." *Pushko*, 2006 WL 7994718 at *1 (quoting Fla. Stat. Ann. § 48.23(3)); *see also Beefy King*, 464 F.2d at 1104.

Relevant here, a showing of a "fair nexus" requires that the proponent show that "[it] has a good faith basis to allege the facts supporting a claim, and that the facts alleged would at least state a viable claim, if true." *Nu-Vision, LLC v. Corp. Convenience, Inc.*, 965 So. 2d 232, 235 (Fla. 5th DCA 2007). Doing so requires the proponent to "show that the lawsuit specifically and directly affects the subject property." *Axos Clearing*, 2019 WL 2082551, at *2. A court in its discretion may require the proponent to post a bond where the property holder demonstrates he or she may likely incur potential loss or damage if the notice of *lis pendens* is unjustified. *Med. Facilities Dev., Inc.*, 675 So. 2d at 918.

### III. Discussion

Plaintiffs' Complaint does not allege "that the action is founded on a duly recorded instrument, or on a mechanic's lien." *Pushko*, 2006 WL 7994718 at *1 (quoting Fla. Stat. Ann. § 48.23(3)). As such, the Court "'may control and discharge the notice of lis pendens as the court may grant and dissolve injunctions,' that is, within its broad discretion." *Id.* Discharge of the Notices of *Lis Pendens* is therefore proper if Plaintiffs fail to establish a "fair nexus" between Plaintiffs "apparent legal or equitable ownership of the property" and "the dispute embodied in the lawsuit." *Chiusolo*, 614 So. 2d at 492.

As discussed above, Plaintiffs argue that the evidence proffered in support of the Notices of *Lis Pendens* on both Properties establishes that Judge Otazo-Reyes erred in concluding that no fair nexus exists between Plaintiffs alleged equitable ownership of the Properties and Defendant

Trust's Properties. The Court reviews the R&R *de novo*, as Plaintiffs' Objection "pinpoint[s] the specific findings" with which Plaintiffs disagree. *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009).

### A. 2501 Property

Plaintiffs contend that they made the required showing of "simply pleading a theoretical nexus" between their claims and the 2501 Property, and that this "minimal showing" sufficiently demonstrates that Plaintiffs' allegations establish "a good faith basis" for a *lis pendens* on the 2501 Property. Objection at 8 (quoting *Nu-Vision, LLC v. Corp. Convenience, Inc.*, 965 So. 2d 232, 234 (Fla. 5th DCA 2007)). Plaintiffs also argue that Judge Otazo-Reyes erred by requiring Plaintiffs' "to fully prove each element in an evidentiary hearing" before discovery is complete. *Id.* The Court disagrees.

Judge Otazo-Reyes correctly found—and Plaintiffs' do not dispute—that the 2501 Property was purchased in 2018, before the alleged fraudulent scheme was initiated in 2020. Plaintiffs' Objection instead argues that the allegations in the Complaint and additional proffered evidence demonstrate a fair nexus between the dispute and the 2501 Property. Plaintiffs contend that a fair nexus is established because the Principal Defendants diverted part of the fraudulently obtained funds to Defendant Trust to "make payment of the property taxes and maintenance costs on the 2501 Property[.]" Objection at 10. Judge Otazo-Reyes reviewed the evidence and found that no evidence established a nexus between Plaintiffs' claims and the 2501 Property. The Court's independent review of this evidence confirms that Plaintiffs have failed to point to evidence linking Plaintiffs money to the 2501 Property.

Plaintiff's Objection points to numerous allegations in Plaintiffs' Complaint that purportedly establish a fair nexus between the dispute and the 2501 Property. Those allegations

11

are insufficient. The Complaint alleges that the Principal Defendants induced Plaintiffs to provide funds to purchase a fictitious property in Fort Lauderdale, Florida, not the 2501 Property. ECF No. [1] ¶ 25. The additional allegations Plaintiffs point to either do not mention the 2501 Property at all, or simply assert that the Principal Defendants or Defendant Trust used fraudulently obtained funds to pay the property taxes or maintain the 2501 Property.[6] To substantiate those allegations, Plaintiffs' proffer bank statements from Defendant AAA Plus Financial Group, Inc.'s ("Defendant AAA Financial") Wells Fargo bank account, ECF No. [1-4], and transaction records from Windmill Title Company Real Estate ("Windmill Title") reflecting wire transfers. ECF No. [78].

The sole reference to the 2501 Property occurs on a January 18, 2022, wire transfer of $466,396.79 from Windmill Title to Defendant AAA Financial. ECF No. [78] at 4. That document fails to establish a fair nexus between the 2501 Property and the dispute. The wire transfer's originating beneficiary information notes that this transfer is in reference to "File 21 2103 Address 888 Bisca[yne] Blvd[.] Num[.] 2501". *Id.* Defendant Trust was not a party to this transaction and purchased the 2501 Property in 2018. It is therefore insufficient to establish that this wire transfer is related to the 2501 Property. Moreover, Plaintiffs allege that their money was *withdrawn* from Defendant AAA Financial's bank account to pay for maintenance costs and property taxes on the

---

[6] *See, e.g.*, ECF No. [1] ¶ 34 ("Upon information and belief, in or around November, 2021, an unknown sum of money was sent and/or withdrawn from the AAA account by, or for the benefit of, Defendants Zaibet, Rebulard, and/or the Trust, to pay the 2021 Miami-Dade County Real Estate Taxes and maintenance costs associated with the real property located at" the 2501 Property); *id.* ¶ 64 ("Zaibet and Rebulard represented to the Plaintiffs that the First Property was for sale and that their funds would be invested in the First Property. However, in reality, Zaibet and Rebulard knew that the First Property was not for sale and the funds received from Plaintiffs would instead be used by Zaibet and Rebulard for their personal use and benefit including, but not limited to, payment of the property taxes and maintenance on the 2501 Property, and acquisition of the 4401 Property and 4601 Property."); *id.* ¶ 83 (Principal Defendants "were unjustly enriched by being provided 1,602,583 euros, which were not used for the purchase of the First Property, but were used, in part, for the benefit of the Trust to pay the property taxes on the 2501 Property and acquire the 4401 and 4601 Properties[.]").

2501 Property "in or around November 2021[.]" ECF No. [1] ¶ 34. The wire transfer shows the reverse, namely, that Defendant AAA Financial received funds from Windmill Title. Plaintiffs did not provide additional evidence indicating that those funds were later transferred to Defendant Trust.

Plaintiffs' allegations and proffered evidence fall short of demonstrating a fair nexus between the dispute and the 2501 Property. The evidence in support of Plaintiff's claim against the 2501 Property fails to establish that any unlawfully obtained funds were used to pay property taxes or maintain the 2501 Property. Plaintiffs are unable to establish "apparent legal or equitable ownership" of the 2501 Property. *Chiusolo*, 614 So. 2d at 492. The Court accordingly agrees with Judge Otazo-Reyes's recommendation with regard to the 2501 Property.

### B. 4401 Property

Plaintiffs also argue that Judge Otazo-Reyes erred as a matter of law in finding that Plaintiffs' fail to show a fair nexus between the dispute and the 4401 Property. Plaintiffs contend Judge Otazo-Reyes erred by "misinterpret[ing] the subject facts and misapply[ing] the plain and unambiguous meaning and effect of the transaction and bank records proffered by the Plaintiffs including, without limitation, mistakenly conflating incoming and outgoing wire transactions records, misidentifying the transaction for which said wires were intended and confusing/misidentifying the roles of the parties identified on such records." Objection at 5 (citing ECF No. [84] at 4-5).

Plaintiffs contend that, taken together, their allegations, Defendant AAA Financials' bank statements, and wire transfer transaction records establish that Defendant Trust used "fraudulently obtained funds … to acquire the 4401 Property." *Id.* at 10. Judge Otazo-Reyes disagreed, finding that Plaintiffs allegations and proffered evidence are too vague to establish a fair nexus between

13

the 4401 Property and the dispute. Plaintiffs' Objection contends that they proffered evidence showing that "Plaintiffs' money intended as an investment on the First Property, w[as] unlawfully diverted by the Defendants and [is] directly traceable to [Defendant] Trust's acquisition of the 4401 Property." Objection at 11.

The Court agrees with Judge Otazo-Reyes that the Plaintiffs' proffered evidence is too vague to establish a fair nexus between the dispute and Defendant Trust's purchase of the 4401 Property. Plaintiffs' point to additional transactions in the Defendant AAA Financial's bank account statements and wire transfers, but these records fail to clarify the relationship between Plaintiffs' allegations and Defendant Trust's purchase of the 4401 Property.

Plaintiffs first provide the "'AS IS' Residential Contract For Sale and Purchase" ("Sales Contract") between Defendant Trust and Vanessa Navarro, ECF No. [1-5].  The Sales Contract provides that Defendant Trust purchased the 4401 Property on from Vanessa Navarro in December 2021.[7] ECF No. [1-5]. Plaintiffs then point to Defendant AAA Financial's bank account statements reflecting the following funds from Plaintiff Muller:

| Date | Amount |
|---|---|
| 12/3/2021 | $557,557.50 |
| 12/14/2021 | $554,423.00 |
| 12/23/2021 | $277,130.00 |

ECF No. [1-3] at 2-3. Plaintiffs next contend that the following bank transfers show Plaintiff Muller's funds were transferred from Defendant AAA Financials' bank account to the following entities:

| Date | Amount | Entity |
|---|---|---|
| 12/10/2021 | $140,000 | Defendant New Miami Realty Corp. |
| 12/28/2021 | $636,985.36 | Windmill Title |

---

[7] The Sales Contract was signed by Defendant Trust and Vanessa Navarro on December 6, 2021, and December 9, 2021, respectively. ECF No. [1-5] at 13.

| 1/18/2022 | $466,396.79 | Windmill Title |
|---|---|---|

ECF No. [1-3] at 3-4, 10. Plaintiffs conclude by identifying the following wire transfers involving alleged closing agent Martha L. Mendez, Windmill Title, Defendant AAA Financial Group, Defendant Trust, and Defendant New Miami Realty Corporation:

| Date | Amount | Originator | Beneficiary | Originating Beneficiary Information (OBI) |
|---|---|---|---|---|
| 1/18/2022 | $140,000.00 | Defendant Trust | Defendant New Miami Realty Corp. | File Number 21 1201 |
| 1/18/2022 | $466,396.79 | Windmill Title | Defendant AAA Financial | File 21 2103 Address 888 Bisca[yne] Blvd[.] Num[.] 2501 |
| 3/11/2022 | $140,000.00 | Martha L. Mendez | Windmill Title | Cash to close for Luxury Properties Trust |
| 3/14/2022 | $465,681.79 | Martha L. Mendez | Windmill Title | Deposit for Luxury Properties Trust |

ECF No. [78] at 3-6. Plaintiffs argue that these transactions demonstrate that Defendant Trust purchased the 4401 Property using Plaintiffs fraudulently obtained funds. However, as Judge Otazo-Reyes accurately observed, these additional transactions fail (1) to trace Plaintiffs' funds from Defendant AAA Financial to the originator of the wire transfers, Martha L. Mendez; (2) the amounts shown on Plaintiffs' transfers to Defendant AAA Financial, Defendant AAA Financial's subsequent transfers, and the various wire transfers do not match; and (3) the 4401 Property is not mentioned on *any* of the above bank statements, bank transfers, or wire transfers.

Plaintiffs argue that Defendant AAA Financial's December 10, 2021 transfer of $140,000.00 was "sent from [Defendant] AAA [Financial's] bank account on behalf of

[Defendant] Trust to [Defendant] New Miami Realty Corp's Escrow Account as [Defendant] Trust's initial deposit on its purchase of the 4401 Property." As indicated above, however, Plaintiffs fail to point to evidence establishing that Defendant AAA Financial's December 10, 2021 transfer was on behalf of Defendant Trust, or was for the purpose of purchasing the 4401 Property.

Plaintiffs have shown that Defendant Trust wired Defendant New Miami Realty Corp. $140,000.00 on January 18, 2022, but that fact fails to establish that Defendant Trust did so using any of Plaintiffs' money. The Sales Contract between Defendant Trust and buyer Vanessa Navarro lists a closing date of January 15, 2021. ECF No. [1-5] at 3. The terms of the Sales Contract required Defendant Trust to wire $140,000.00 to Defendant New Miami Realty Corp. by January 18, 2021. *Id.* The January 18, 2022, wire transfer shows that Defendant Trust did so. That showing is insufficient, however, as Plaintiffs have not demonstrated that any of their money was transferred to Defendant Trust, or that Plaintiffs' money was used for the January 18, 2022 wire transfer. Moreover, none of the other individuals or entities identified by Plaintiffs are mentioned in the Sales Contract.[8]

Plaintiffs also contend that the January 18, 2022, March 11, 2022, and March 14, 2022 wire transfers were sent "on behalf of [Defendant] Trust … to close on the 4401 Property[,]" but fail to identify any evidence linking Defendant Trust to those transactions. None of those wire transfers were sent or received by Defendant Trust. As discussed, Plaintiffs' proffered evidence shows that Defendant Trust transferred money, but not that Defendant Trust received Plaintiffs' money. The fact that those wire transfers reference the 2501 Property, "[c]ash to close for Luxury

---

[8] Most notably, the Sales Contract does not mention Martha L. Mendez, the individual Plaintiffs allege served as the "closing agent" on the purchase of the 4401 Property. *See generally* ECF No. [1-5]; Objection at 11.

Case No. 23-cv-22276-BLOOM/Otazo-Reyes

Properties Trust," and a "[d]eposit for Luxury Properties Trust" fail to establish a fair nexus between Defendant Trust and its purchase of the 4401 Property. ECF No. [78] at 5-6.

The Court accordingly agrees with Judge Otazo-Reyes that Plaintiffs fail to demonstrate a fair nexus between the dispute and the Properties. Plaintiffs fail to trace their allegedly fraudulently obtained funds to Defendant Trusts purchase of the 4401 Property or maintenance of the 2501 Property.[9] Plaintiffs therefore fail to establish apparent or equitable ownership justifying *lis pendens* on the Properties.

### IV. Conclusion

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The Report and Recommendation, **ECF No. [84]**, is **ADOPTED**;

2. Plaintiffs' Objection, **ECF No. [89]**, is **OVERRULED**;

3. Defendant Trust's Motion, **ECF No. [21]**, is **GRANTED**;

4. Plaintiffs' Notices of *Lis Pendens*, **ECF Nos. [14]-[47]**, are **DISCHARGED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 27, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[9] The Court will accordingly not require Plaintiffs to post a conditional bond, as Plaintiffs' Notices of *Lis Pendens* shall be discharged by this Order.