**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-22276-Civ-BLOOM/TORRES

PATRICK MULLER, and
MOUNA BOUZID,

     *Plaintiffs,*

v.

ITEB ZAIBET, *et al.*,

     *Defendants.*

_____/

## REPORT & RECOMMENDATION ON DEFENDANTS'
## MOTIONS TO DISMISS

This matter is before the Court on three separate motions to dismiss the Complaint: first, New Miami Realty, Corp. ("New Miami") moves to dismiss the aiding and abetting claim alleged in Count XIV.   [D.E. 29].   Second, Yvette Tenord ("Tenord") and Johnny Previlus ("Previlus") move to dismiss claims for wire fraud, mail fraud, RICO liability, and unjust enrichment.   [D.E. 63].   And third, AAA Plus Financial Group Inc. ("AAA"), Res Investment Inter, Inc. ("Res Investment"), and Infinite Res Investment, LLC ("Infinite Res"), move to dismiss claims of unjust enrichment and equitable lien.   [D.E. 64].   Plaintiffs, Patrick Muller ("Muller") and Mouna Bouzid ("Bouzid"), have filed timely responses to all three motions, [D.E. 52, 95 & 96], to which the Defendants have replied respectively.   [D.E. 60, 100 & 101].

1

Therefore, the motions are ripe for disposition.[1]   After careful consideration of the motions, responses, replies, the relevant authority, and for the reasons discussed below, New Miami's motion [D.E. 29] should be **GRANTED**, and the other moving Defendants' motions [D.E. 63 & 64] should be **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

The Plaintiffs in this case are Patrick Muller and Mouna Bouzid, a married couple who reside in Tunisia.   According to the Complaint, Plaintiffs were the victims of an alleged real estate fraud perpetuated by Iteb Zaibet ("Zaibet"), a Tunisian citizen who resides in Florida, and his wife Lolita C. Rebulard ("Rebulard") (collectively, the "main defendants").   The Plaintiffs assert that additional purported accomplices, all with ties to the Florida real estate market, assisted the main defendants in carrying out this alleged fraud.

Specifically, Plaintiffs claim that, in or around April 2020, they were approached by the main defendants with an enticing investment opportunity in the South Florida real estate market.   [D.E. 1 ¶¶ 22–25].   The investment proposal by Zaibet consisted in the acquisition of an indirect ownership stake in a luxury apartment located in Fort Lauderdale, Florida (the "5421 Property").   *Id*. ¶ 25.   As part of the investment, Plaintiffs would need to do a cash infusion of approximately €1.6 million into a Florida fund owned by Zaibet.   The fund would in turn use that

---

[1] On November 6, 2023, the Honorable Beth Bloom referred all three motions to the Undersigned Magistrate for a report and recommendation.   [D.E. 102].

cash to purchase the 5421 Property from Florida Luxury Realty Corp ("Florida Luxury"), to then resell the property shortly thereafter at a profit.   *Id*. ¶¶ 25–28.

To induce Plaintiffs to make the investment, Zaibet made several material misrepresentations, including that Florida Luxury was selling the 5421 Property to Zaibet's fund and that, in connection with the sale, Defendant AAA Plus Financial Group ("AAA") would act as the escrow agent for Florida Luxury.   *Id*. ¶¶ 28–29. Accordingly, the main defendants instructed the Plaintiffs to wire their investment money to a Wells Fargo bank account held by AAA in the U.S.   *Id*.   Relying on these misrepresentations, Plaintiffs made a €1,602,583 investment by way of seven different wire transactions effectuated between November 10, 2021, and January 7, 2022.[2]   *Id*. ¶ 30.

However, Plaintiffs' investment never materialized.   In fact, Zaibet turned out to be a conman,[3] and the "real estate investment opportunity" nothing more than a lie: real estate fund never existed, Florida Luxury did not own the 5421 Property, and this property was never for sale.   *Id*. ¶ 32.   Instead, soon after reaching AAA's bank account in the U.S., Plaintiff's funds were diverted into purposes unrelated to the 5421 Property and for the personal benefit of the main defendants and their alleged accomplices.   These unrelated purposes included the purchase of other real estate property in Florida (*i.e.*, the "2501 Property", the "4401 Property", the "4601 Property", and the "Port St. Lucie Property").   *Id*. ¶ 34.   Some

---

[2] Three of the wire transactions went directly to Zaibet (for a sum of € 102,583), and the last four—effectuated between December 3 and January 7—were directed at AAA's Wells Fargo bank account (for a sum of €1,500,000).

[3] Plaintiffs allege that Zaibet, also known as "Swagg man", is a well-known fraudster who has embezzled millions from victims around the world.

of these properties were subsequently sold at a profit and as part of an alleged effort to launder the funds originally wired by Plaintiffs into the AAA bank account.  *Id*. ¶¶ 35–38.

Based on these allegations Plaintiffs sued eleven different defendants, including the main defendants, Zaibet and Rebulard, as well as a number of entities and individuals involved in the Florida real estate market.  Several of these defendants now move to dismiss many of the counts against them based on insufficient pleading of the elements necessary for each claim.

## II.    APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.; *see also Edwards v. Prime, Inc*., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).  Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions").   In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).   Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012).   The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"   *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## III.   ANALYSIS

### A.   *New Miami's Motion to Dismiss [D.E. 29]*

According to the Complaint, as Plaintiffs' investment advisors, the principal defendants (Zaibet and Rebulard) owed fiduciary duties to them, which they deliberately breached by perpetuating the alleged fraud.   Count XIV of the Complaint accuses New Miami Realty, Corp. ("New Miami"), a Florida-based real estate business, of aiding and abetting the main defendants' breach of fiduciary duty. In essence, Plaintiffs assert that by participating as a real estate broker in Zaibet's purchase of the "4601 Property"—one of the unrelated transactions into which the main defendants diverted Plaintiffs' investment—New Miami should be held liable under accomplice liability.   However, because the Complaint fails to sufficiently

5

plead a plausible claim for adding and abetting against New Miami, the motion to dismiss Count XIV should be Granted.

Under Florida law,[4] to state a claim for adding and abetting Plaintiffs must show that: (1) the main defendants owed a fiduciary duty to Plaintiffs; (2) the main defendants breached that duty; (3) New Miami knew about the main defendants' breach; and (4) New Miami substantially assisted with the breach. *See Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 824 (11th Cir. 2015) (noting that failure to sufficiently plead any one of these elements is dispositive).

Even when taken at face value, as we must do, the allegations in the Complaint fall short of pleading a plausible cause of action for adding and abetting against New Miami.   The reason why is that the Complaint is lacking plausible facts evidencing New Miami's knowledge of the main Defendants' breach.   Contrary to Plaintiffs' conclusory averments of liability, the Complaint lacks any factual allegations supporting the reasonable inference that New Miami had any knowledge of the alleged real estate fraud or the corollary breach of fiduciary duties by the main defendants.   Plaintiffs do not make a single factual assertion showing that New Miami was aware of the investment relationship between Plaintiffs and the main defendants, let alone the nature of their specific conversations or the representations made therein.   Indeed, the pleadings do not even assert that New Miami was even aware that Plaintiffs existed.   In other words, neither the Complaint nor Plaintiffs'

---

[4] When sitting in diversity, "[f]ederal courts adjudicating state law claims apply the substantive law of the state where they render decisions."   *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

generic response in opposition [D.E. 52] make a fact-based showing that New Miami "had knowledge of the breaches of fiduciary duty committed by Defendants Zaibet and Rebulard against Plaintiffs."   [D.E. 1 ¶ 111].

The only factual allegations in the Complaint purportedly connecting New Miami to the alleged scheme rely on the fact that (i) New Miami was the recipient of a $140,000 wire transfer sent from the AAA account as an initial down payment in connection with Zaibet's acquisition of the 4601 Property; and (ii) that New Miami provided its real estate listing and marketing services to Zaibet in connection with the subsequent sale of the 4601 Property.   [D.E. 1 ¶¶ 34, 38].   Yet, nothing about these facts supports a reasonable plausible inference that New Miami was knowingly aiding and abetting in a fraud. Plaintiffs do not attack the legality of these seemingly benign transactions, nor do they point to any red flag to which New Miami could have potentially turned a blind eye.   Absent such details, an aiding and abetting claim is not plausible. *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1344 (S.D. Fla. 2018) ("Although Plaintiffs identify several 'red flags' that should have indicated to the [] Defendants that something was amiss with the Woodbridge securities, these red flags fail to establish actual knowledge on the part of the External Sales Agent Defendants.").

In other words, the only thing that Plaintiffs have pleaded as it relates to New Miami is that New Miami provided its standard broker services in an otherwise unremarkable real estate transaction that was entirely unrelated to the "5421 Property".   And, without more, we cannot say that Plaintiffs have properly stated a claim for adding and abetting against New Miami.   *See Arbitrajes Financieros, S.A.*,

605 F. App'x at 824 (adding and abetting claim fails where pleader does not "point to other facts showing that" defendant "had actual knowledge" of the breach of fiduciary duty); *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) (affirming dismissal of adding and abetting claim because defendant who provided "routine services" must "have actual knowledge of [the] fraudulent activities."); *Honig,* 339 F. Supp. 3d at 1344 (adding and abetting claim fails in the absence of "factual allegations in the FAC supporting the notion that the [defendants] had actual knowledge of the [] scheme").

While we acknowledge the Plaintiffs' assertion that New Miami, through its participation, indirectly contributed to the diversion of Plaintiffs' funds orchestrated by the main defendants, we are unable to conclude that New Miami was complicit in the fraud, as the Complaint lacks specific factual allegations demonstrating New Miami's awareness of the fraudulent nature of these transactions.   Indeed, the factual allegations purporting sustaining accomplice liability are entirely consistent with perfectly innocent conduct in the part of New Miami as a real estate broker. Thus, without allegations supporting inferences of actual knowledge of wrongdoing, the Complaint has not "nudged [Plaintiffs'] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 570.   Therefore, the motion to dismiss Count XIV of the Complaint should be **GRANTED**.[5]

---

[5] We note that the Court granted Plaintiffs an early opportunity to amend the complaint in response to the Defendants' motions. [D.E. 93].   Plaintiffs chose not to file an amended complaint.   Nor did they request an amendment as an alternative to dismissal in their response to this motion. [D.E. 52].   So Plaintiffs have waived any entitlement to a Rule 15 amendment against New Miami.   The claim against New Miami should thus be Dismissed with prejudice. Further, the time for filing

### B.   _Tenord's and Previlus' Motion to Dismiss [D.E. 63]_

Next, we turn to the joint motion to dismissed filed by Defendants Yvette Tenord and Johnny Previlus.[6]   Plaintiffs allege that Tenord and Previlus are the sole owners, operators, and alter egos of defendant AAA, as well as the sole managing members and alter egos of defendants Res Investments and Infinite Res.   [D.E. 1 ¶¶ 12–16].   Based on Tenord's and Previlus' nexus to these three entities (and their presumed involvement in their day-to-day operations), which Plaintiffs allege assisted the main defendants in diverting Plaintiffs' funds into unrelated purchases and transactions, Plaintiffs assert the following claims against Tenord and Previlus: wire fraud (Count I), mail fraud (Count II), civil RICO (Count III), and unjust enrichment (Count IV).   Notably, they were not sued for aiding and abetting or for conspiracy in concert with the main Defendants.

Based on the claims that are pleaded against them in this Complaint, we agree with defendants Tenord and Previlus that Plaintiffs' fraud and RICO allegations as to them are insufficient to withstand pleading scrutiny under both _Twombly_ and Rule 9(b).   As noted in the motion to dismiss, the Complaint fails to allege even the most basic facts to show that Tenord or Previlus were aware of, participated in the creation of, or knowingly acted in furtherance of the alleged scheme to defraud the Plaintiffs.

---

amended pleadings has now passed. [D.E. 40].   Of course, if no prejudice exists, New Miami can still seek leave to file an amended claim if good cause is shown under Rule 16, such as newly found discovery uncovering any factual basis to allege New Miami had knowledge of the main Defendants' breach or scheme.   That holds true for the other dismissed claims and parties addressed below.

[6] Previlus and Tenord are a married couple involved in the Florida real estate market: Previlus is a Mortgage Loan Originator ("MLO") and Tenord is a real estate agent.   [D.E. 63 ¶ 1].

On the other hand, we agree with the Plaintiffs that their unjust enrichment claim is sufficiently pleaded.   As such, Tenord's and Previlus' motion should be **GRANTED in part** and **DENIED in part**.

### 1.    *Neither Wire nor Mail Fraud is Sufficiently Pleaded*

To state a cause of action for wire and mail fraud, Plaintiffs must show that defendants Tenord and Previlus (1) intentionally participated in the scheme to defraud them and (2) used the mails or wires in furtherance of that scheme. *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1343 (11th Cir. 2017).   Further, allegations of fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "a party . . . state with particularity the circumstances constituting fraud."   *See* Fed. R. Civ. P. 9(b).   This means that to satisfy Rule 9(b) in a civil action involving a scheme to defraud, a plaintiff must identify the time, place, and substance of each allegedly fraudulent act.   *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997).   And when the alleged fraud involves multiple defendants, Rule 9(b) requires that the plaintiff plead sufficient facts to "inform each defendant of the nature of [its] alleged participation in the fraud."   *Id*. (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994)).

As was the case with the claims leveled against New Miami, the allegations supporting Tenord's and Previlus' purported participation in the fraudulent scheme also suffer from fatal factual deficiencies.   Indeed, the Complaint is devoid of a single non-conclusory factual averment from which one could reasonably infer that Tenord

and Previus even knew about Plaintiffs' dealings with the main defendants, let alone intentionally participated in any fraudulent scheme.

For instance, the Complaint repeatedly asserts that "Zaibet, Rebulard, Tenord and Previus, knowingly devised and participated in a scheme to defraud the Plaintiffs by making representations that they were making investments in real estate on the Plaintiff's behalf when in reality there were using funds for their own personal benefit."   [D.E. 1 ¶ 43].   This conclusory averment, however, is completely unsupported as to these Defendants, for not once does the Complaint allude to a single fact evidencing that (i) Tenord or Previus had a hand in the creation of this scheme; (ii) Tenord or Previus articulated or communicated to the Plaintiffs a single statement, let alone a material misrepresentation; or (iii) Tenord or Previus ever directed the Plaintiffs to execute any of the wire transactions into AAA's bank account.

Indeed, according to Plaintiffs' own assertions, it was Zaibet and Rebulard (the main defendants), not Tenord nor Previus, who met with the Plaintiffs in Tunisia around April 2020, made material misrepresentations regarding the nature of the purported investment, and directed the Plaintiffs to execute the wire transfers into AAA's bank account, via wiring instructions issued by Florida Luxury (a company controlled by Zaibet).   *Id*. ¶¶ 22–25, 28–34.   In other words, the Complaint does not provide a single point of contact between Tenord, Previus, and Plaintiffs (or between Tenord, Previus, and the main defendants) supporting the notion that Tenord's and Previus' participation in the AAA money transfers were accompanied by the knowledge and intent to defraud.

And while Plaintiffs would have this Court impute upon Tenord and Previlus the detailed allegations they make against the main defendants, to survive a motion to dismiss—especially one premised on the heightened pleading standards of Rule 9(b)—a pleader must do more than simply lump together defendants into non-particularized and all-encompassing fraud allegations. *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 663 (11th Cir. 2015) ("the plaintiffs lump all the defendants together as the sources of the misrepresentations, and they pleaded the who, what, and when elements of their fraud in the alternative. . . . [L]umping multiple defendants together in such generalities is insufficient under Rule 9(b)); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) (dismissing claims because "it is apparent that Plaintiffs have simply lumped together all of the Defendants in their allegations of fraud.") (quotes and citation omitted); *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (improper to lump defendants together "when it comes to attributing acts of mail and wire fraud").

Like the situation with the New Miami defendant addressed above, the Plaintiffs have not averred sufficient factual material to plausibly show that Tenord and Previlus transitioned from being real estate service providers to criminal accomplices in connection with the wire transactions. Surely, Plaintiffs' theory, that Tenord's and Previlus' role in the act of diverting the funds that Plaintiffs deposited into the AAA account, could theoretically yield fraud liability. Yet, the Complaint simply fails to provide any factual support to allow this Court to connect the dots in a way that reasonably shows that Tenord's and Previlus' involvement in these four wire transactions was not that of an ordinary real estate agent, but that of an actor

with unclean hands acting in concert with the main defendants.   This deficit in specific factual assertions renders Plaintiffs' fraud allegations, at least as to Tenord and Previlus, formulaic, generic, and conclusory.[7]   Therefore, Counts I and II should be dismissed as they relate to Tenord and Previlus.

### 2.      *The RICO Claim Also Fails*

Having determined that the wire and mail fraud claims as to Tenord and Previlus are insufficiently pleaded, we now turn to Count III of the Complaint. Tenord and Previlus move to dismiss Count III, which charges them with a civil RICO claim pursuant to 18 U.S.C. § 1961 *et seq*.   Plaintiffs submit that Zaibet, Rebulard, Tenord, and Previlus, are individuals associated in fact who are engaged in wire and mail fraud that amounts to a pattern of racketeering.   [D.E. 1 ¶¶ 51–56].

Here, too, we agree with defendants that the allegations in the Complaint fall well below the high threshold needed to properly plead a civil RICO claim premised on fraud.   Thus, Count III of the Complaint should also be dismissed.

To state a civil claim under the RICO act, a complaint must allege "that the defendant committed a pattern of . . . predicate acts," "that the plaintiff suffered injury to business or property," and "that the defendant's racketeering activity proximately caused the injury."   *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations omitted).   "In order to prove a pattern of racketeering . . . , a plaintiff must show at least two racketeering predicates that are related, and

---

[7] The same holds true as to the mail fraud allegation in Count II, as the Complaint fails to proffer a single instance of mail use by either Tenord or Previlus for any purpose, let alone in furtherance of the alleged scheme.   And again, the dismissal should be with prejudice absent a showing of good cause why an amended complaint should now be permitted against them under Rule 16.

that they amount to or pose a threat of continued criminal activity." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).   Moreover, because Plaintiffs' RICO claims are premised on the alleged predicate acts of mail and wire fraud, "their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Am. Dental Ass'n*, 605 F.3d at 1291.   "The plaintiff must allege facts with respect to each defendant's participation in the fraud."   *Id.*

As a threshold point, we have already found that, as pleaded, the Complaint fails to properly state that either Tenord or Previlus engaged in the acts of wire or mail fraud, *see supra* (B)(i), and without these properly stated predicate acts Plaintiffs cannot sustain a RICO claim as to them.   *See Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1343 (11th Cir. 2017) (affirming dismissal of fraud-based RICO claim where "the complaint alleges only one statement—not two—made by either Tozer or Rasband over the wires in furtherance of the conspiracy to defraud"); *Am. Dental Ass'n*, 605 F.3d at 1291 (upholding dismissal of RICO claim where "Plaintiffs do not point to a single specific misrepresentation by Defendants," and merely "provide[d] a list of mailings and wires, without ever identifying any actual fraud").

To reiterate, as noted above, the Complaint does not identify any fraud or allege a single statement by either Tenord or Previlus in furtherance of the alleged scheme.   Instead, Plaintiffs plead material misrepresentations and fraudulent acts by the main defendants and impermissibly impute those to Tenord and Previlus by

14

lumping them together with the main defendants into unspecific fraud allegations. This, as noted earlier, is not sufficient to meet the particularity standard of Rule 9(b). *See Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 474 (11th Cir. 2016) ("Although Plaintiffs invite us to read the TAC 'as a whole,' Rule 9(b) does not permit us to assemble the TAC's impressive collection of disparate and disjointed facts into a collage of fraud."); *Brooks*, 116 F.3d at 1381 (finding that fraud-based RICO claim is deficient because "Plaintiffs have simply 'lumped together' all of the Defendants in their allegations of fraud.") (citations omitted).

Second, even if we overlook the fact that the Complaint fails to allege any predicate RICO acts as to Tenord and Previlus, Plaintiffs' RICO claim is still subject to dismissal because they have failed to show that the alleged acts constitute a pattern of racketeering activity.   To establish a pattern of racketeering activity, the alleged predicate acts must "demonstrate criminal conduct of a continuing nature." *Lawrie*, 656 F. App'x at 467.   Here, we are not convinced that the four wire transactions forming the basis of Plaintiffs' RICO claim against Tenord and Previlus, all of which occurred within the span of approximately one month, *see* [D.E. 1 ¶ 53] (*i.e.*, December 3, 2021, December 8, 2021, December 23, 2021, and January 7, 2022), amount to a showing of criminal continuity.   And while Plaintiffs assert that Zaibet is a known conman accused of defrauding victims around the world on a repeated basis, Plaintiffs do not aver a single fact linking Tenord or Previlus to any of those other schemes or frauds aimed at individuals other than the Plaintiffs in this lawsuit.

In other words, to the extent that the Complaint can be said to attribute RICO predicate acts to Tenord and Previlus, it does so only with respect to one short-lived

criminal episode (*i.e.*, defrauding Plaintiffs), carried out in a short span of time (*i.e.*, less than two months), and through the execution of a handful of wire transactions (*i.e.*, four closely times wire deposits).   Nothing in the Complaint suggests that Tenord and Previlus are engaged in continuing criminal activity which could have or will continue indefinitely, and without these facts Plaintiffs cannot establish a pattern of racketeering activity that is actionable under RICO as to Tenord and Previlus.   *See Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1266 (11th Cir. 2004) ("This Circuit has determined that an alleged mail fraud scheme lasting approximately six months 'was accomplished in too short a period of time . . . to qualify it as a pattern of racketeering activity'" (quoting *Aldridge v. Lily–Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 593 (11th Cir. 1992)); *Riggs Nat. Bank of Washington, D.C. v. Freeman*, 684 F. Supp. 1086, 1088 (S.D. Fla. 1988) (dismissing RICO claim where the complaint "does not make the enterprise sufficiently 'continuing'", because nothing "indicates a threat of continuing criminal activity beyond the [isolated] goal"); *Casaburro v. Beery*, No. 6:14-CV-890-ORL-37KR, 2014 WL 4854291, at *3 (M.D. Fla. Sept. 29, 2014) ("the alleged scheme—which appears to have had the discrete goal of foreclosing an ill-gotten construction lien on Plaintiff's home—lasted less than a year and therefore did not occur over a sufficiently substantial period of time to demonstrate closed-ended continuity.").

In sum, Plaintiffs' RICO claims against Tenord and Previlus fail on two counts: (i) Plaintiffs have not pleaded the predicate fraudulent RICO acts with the required level of particularity to survive pleading scrutiny under either Rule 8 or Rule 9(b); and (ii) even assuming that the fraud allegations as to Tenord and Previlus are

sufficiently stated, the allegations in the Complaint cannot sustain a claim of criminal conduct of a continuing nature.   Thus, the RICO claims made in Count III of the Complaint should also be dismissed.

### 3.    Unjust Enrichment is Sufficiently Pleaded

Next, Tenord and Previlus move the Court to dismiss Count IV of the Complaint, which alleges a quasi-contractual claim for unjust enrichment. According to the motion to dismiss, the unjust enrichment claim should be dismissed because this remedy is not available when Plaintiffs have an adequate legal remedy at law.   Thus, Tenord and Previlus assert that the claim is duplicative and superfluous because it relies on the same factual predicates alleged in support of Plaintiffs' claims against the main defendants and, as such, it ought to be dismissed as to them.   These are the only objections that Tenord and Previlus raise as to the unjust enrichment claim.   But Florida law does not support their single theory for dismissal.

As a threshold point, we have already found that the factual allegations in the Complaint do not allow Plaintiffs to advance any of the legal claims in Counts I, II, and III, against Tenord and Previlus.   Based on those pleading deficiencies, the unjust enrichment claim in Count IV is thus the only remedy available to Plaintiffs *as to* Tenord and Previlus, which renders defendants' overlap theory moot.   In this context, Plaintiffs' unjust enrichment claim is better construed, not as an overlapping claim, but as a claim in the alternative, a pleading practice that is perfectly permissible under Federal Rule of Civil Procedure 8(d)(3).   *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of

consistency."); *AIM Recycling Fla., LLC v. Metals USA, Inc.*, No. 18-60292-CIV, 2019 WL 1991946, at *2 (S.D. Fla. Mar. 4, 2019) ("The Court notes that Plaintiffs' claim of unjust enrichment is not as clearly pled in the alternative as it could be. Nevertheless, viewing the pleading in the light most favorable to the non-moving party, the Court holds that Plaintiffs' unjust enrichment claim is adequately pled in the alternative in anticipation of Defendants claiming that they committed no wrong.").

Moreover, Defendants' theory – that an unjust enrichment claim is purely equitable in nature, so any relief at law against them *or any other* defendant negates the existence of an equitable remedy – misunderstands how Florida law treats such claims.   As the Third District Court of Appeal explained in a recent case, "[w]hile courts state unjust enrichment is equitable in nature, '[t]he use of the term 'equitable' in reference to an unjust enrichment claim denotes fairness and does not mandate that unjust enrichment be construed as seeking only an equitable, as opposed to a legal, remedy.'" *Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 429 (Fla. 3d DCA 2022) (quoting *Duty Free World, Inc. v. Miami Perfume Junction, Inc.,* 253 So. 3d 689, 694 (Fla. 3d DCA 2018)).   Hence, the availability of viable claims at law against other defendants does not dispose of the legal quasi-contractual claim they may have against third parties like these Defendants.   The "equitable" nature of the claim relates to the third element of the claim: whether Defendants are legally obligated to pay compensation to Plaintiffs from a financial benefit they received from them.   If that turns out to be the case, then a contractual remedy is available to help make Plaintiffs whole, regardless of any other claim against these or other defendants in the case.

Of course, if the trier of fact determines that Plaintiffs received fully value from the work performed by these moving Defendants, then no unjust enrichment claim can lie. *See, e.g., American Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. 5th DCA 2007) ("When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails.") (citations omitted). But that determination of ultimate liability cannot be made at the pleading stage. If a claim can be stated on the merits, an unjust enrichment claim can be a viable alternative method of recovery to help make the Plaintiffs whole arising from the alleged fraud. It cannot simply be dismissed as a matter of law based on the faulty premise advanced in this motion.

Turning to the merits of the claim, an unjust enrichment claim requires that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value." *Pincus v. Speedway, Inc.*, 2015 WL 5820808, at *4 (S.D. Fla. Oct. 6, 2015). Here, the Complaint expressly alleges—and defendants do not dispute—that Plaintiffs issued four money transfers to Tenord's and Previlus' entity, AAA, in the sum of €1.5 million between December 3, 2021, and January 7, 2022. [D.E. 1 ¶¶ 30–31, 59]. Further, Plaintiffs allege that Tenord and Previlus were aware that these wires had taken place and that, shortly after completion of the wires, Tenor and Previlus diverted these funds from AAA's bank account and for their own benefit and that of their corporate entities. Finally, Plaintiffs allege that Tenord and Previlus are the sole owners, operators, and alter

egos of defendant AAA, as well as the sole managing members and alter egos of defendants Res Investments and Infinite Res.   *Id.* ¶¶ 12–16, 33–36, 59–62; *see also* [D.E. 1-4].   Accordingly, as far as the pleading stage is concerned, Plaintiffs have arguably pleaded an unjust enrichment claim as to Tenord and Previlus.

Notably, these allegations could theoretically have supported a tortious conversion claim against Tenord and Previlus if Plaintiffs could allege that the purpose of diverting those monies was intended to deprive Plaintiffs of monies belonging to them.   But Plaintiffs have instead alleged an unjust enrichment claim that carries a lesser burden because wrongful intent is *not* an element of an unjust enrichment claim.   Given that lesser burden for a quasi-contractual claim, the heightened pleading requirements for fraudulent torts need not be satisfied.   So these allegations are sufficient to raise a plausible legal theory that these Defendants were unjustly enriched by their receipt of monies from Plaintiffs that they retained without paying fair value to Plaintiffs in exchange.   *See, e.g., Commerce P'ship 8098 Ltd. P'ship v. Equity Contr. Co.,* 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (citations omitted) ("A contract implied in law is a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct. The fiction was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation.").

Accordingly, this motion to dismiss should be **GRANTED in part** (as to Counts I, II, and II) **and DENIED in part** (as to Count IV).

### C. *AAA's, Rest Investment's, and Infinite Res' Motion to Dismiss [D.E. 64]*

Finally, we turn to the joint motion to dismiss submitted by the entities associated with Tenord and Previlus; namely defendants AAA, Res Investment, and Infinite Res. Their motion seeks dismissal of the two counts brought forth by the Plaintiffs for allegedly assisting the main defendants in diverting Plaintiffs' funds into transactions unrelated to the purchase of the 5421 Property. Specifically, the defendants seek dismissal of the unjust enrichment claim Plaintiffs asserted against all three of them (Count IV), and dismissal of the equitable lien claim (Count XIII) asserted against defendant Res Investment. These Defendants' motion should be **GRANTED in part** and **DENIED in part**.

#### 1. *Unjust Enrichment is Sufficiently Pleaded*

As mentioned above, the Plaintiffs' claims as to these entities stem from the allegations that these entities facilitated the act of diverting the funds that, at the direction of Zaibet, the Plaintiffs deposited into the AAA account. Specifically, the Complaint alleges that AAA disbursed the funds to various entities to make payments for purchases of real estate other than the 5421 Property. *See* [D.E. 1, ¶¶ 33, 34]. One of these entities was Res Investment. *Id.* Between November 2021, and May 2022, AAA allegedly disbursed nearly $1,890,000.00 to Miami-Dade County, Windmill Title Real Estate, New Miami Realty Corp., Space Coast Credit Union, South Florida Title Union, and VA Leasing for the purchase of real property and other assets. *Id.* Several of these disbursements from AAA went toward the purchase of real property in Port St. Lucie, Florida on behalf of Res Investment.

As threshold matter, we have already found that the Complaint sufficiently pleaded a claim for unjust enrichment against these entities' principals, thus, the motion's averments to the contrary are unpersuasive.   *See supra* (B)(iii).   Again, all that Plaintiffs need to do at the pleading stage to state a claim for unjust enrichment is show that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof."   *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).   Here, Plaintiffs have alleged that they transferred a sum of approximately €1.5 million into AAA's bank account, and that soon thereafter Tenord, Previlus, and AAA used those funds for their own benefit, and that of their related entities, including by purchasing Florida real estate.   One of those purchases was the acquisition of the Port St. Lucie Property on behalf of Res Investment, which Plaintiffs alleged Res Investment quickly sold at a profit.   Plaintiffs never saw a dime of that money and never received any other value or consideration for the benefits retained by these Defendants.

As a result, Defendants' objections here ring hollow because, unlike Plaintiffs' fraud claims, unjust enrichment does not require a showing that defendants were aware of the fraudulent real estate scheme or knowingly participated in it. Likewise, factual disputes as to the breadth of the benefit ultimately retained by AAA and its related entities in connection with the wire transactions effectuated by Plaintiffs, or the actual amounts of money that flowed out of AAA's bank account and the intended purposes for those conveyances, are issues better suited for summary

judgment or trial.   *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1298 (11th Cir. 2007) ("We are at the pleading stage, not the proof stage"); *Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 892 (N.D. Ohio 2003) ("[Plaintiff] does not need to prove [its claim] at the pleading stage. While it may fail at summary judgment or at trial, it must, at this stage, only allege a 'short and plain statement of the claim showing that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)).

At this point, Plaintiffs only have to plausibly allege that they conferred a benefit upon defendants, that defendants retained that benefit, and that allowing defendants to retain that benefit without paying a fair value would be unjust. Plaintiffs have done so here.   Accordingly, the motion should be Denied with respect to Count IV of the Complaint and these moving Defendants.

## 2.   *The Equitable Lien Claim Fails*

The same does not hold true for Count XIII, where Plaintiffs seek an equitable lien against Res Investment.   State law governs the imposition of equitable liens. *In re Tsiolas*, 236 B.R. 85, 88 (Bankr. M.D. Fla. 1999); *In re Abrass*, 268 B.R. 665, 683 (Bankr. M.D. Fla. 2001).   "An equitable lien is a charge or encumbrance upon the land so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists."   *Ben-Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1373 (S.D. Fla. 2008) (quotes and citation omitted).   Under Florida law, establishing an "equitable lien is an extraordinary remedy to be applied only where the law fails to give relief and justice would suffer without the imposition of such a

lien."  *In re Johnson*, 336 B.R. 568, 571 (Bankr. S.D. Fla. 2006).   Further, it has been established that, "in order to warrant the imposition of an equitable lien, the funds, payment of which are to be secured by the equitable lien, must be directly traceable to the real property in question."   *Id.* at 572.

Here, we agree that the equitable lien claim against Res Investment should be dismissed.   While the Complaint adequately presents allegations supporting a plausible unjust enrichment claim concerning the wires sent by the Plaintiffs to AAA's bank account, these factual assertions do not establish the necessary nexus between the funds and any specific property required to warrant the imposition of a particular equitable lien.   This is particularly true as it relates to Res Investment and the purchase of the Port St. Lucie Property.   Although Plaintiffs conclusorily allege that the conveyances by AAA to two different entities (Space Coast Credit Union and South Florida Title Union) were for the purpose of acquiring the Port St. Lucie Property on behalf of Res Investment, [D.E. 1 ¶¶ 34–35], Plaintiffs simply fail to plead any facts connecting these disparate conveyances to either Res Investment or the actual purchase of the Port St. Lucie Property.

In other words, the Complaint does not plausibly claim that the Plaintiffs' funds are directly traceable to the Port St. Lucie Property, and without this direct funds-property nexus an equitable lien cannot attach to the property.   *Cf. In re Fin. Federated Title & Tr. Inc.*, 273 B.R. 706, at 715, 718 (Bankr. S.D. Fla. 2001) (explaining that Florida courts enforce equitable liens "where the funds obtained through fraud [] can be directly traced to the investment," and imposing equitable lien because it was "undisputed that at least $977,921" used to purchase the property

could "be traced directly back to the Debtor."). In this sense, we reiterate this Court's prior ruling, finding that the Complaint fails to sufficiently plead facts that trace the funds to the purchase of any specific properties. [D.E. 84] (recommending dissolution of notices of lis pendens because, among other things, the alleged transactions did not reflect matching amounts and the properties were not mentioned in the wire transfers). Thus, as it relates to Res Investment, the motion to dismiss should be Granted and Count XIII of the Complaint should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the motions to dismiss be adjudicated as follows:

1. Defendant New Miami's motion [D.E. 29] should be **GRANTED** as to Count XIV (adding and abetting).

2. Defendants Yvette Tenord's and Johnny Previlus' motion [D.E. 63] should be **GRANTED** as to Counts I (wire fraud), II (mail fraud), and III (civil RICO), and **DENIED** as to Count IV (unjust enrichment).

3. Defendants AAA's, Res Investment's, and Infinite Res' motion [D.E 64] should be **GRANTED** as to Count XIII (equitable lien) and **DENIED** as to Count IV (unjust enrichment).

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from

challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.    28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of January, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge