UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**CASE NO. 2023-cv-22276-JB**

PATRICK MULLER, an individual, and MOUNA
BOUZID, an individual,

    Plaintiffs,

vs.

ITEB ZAIBET a/k/a "Swagg Man", an individual,
LOLITA C. REBULARD, an individual, LUXURY
PROPERTIES INC., a Delaware corporation,
BEACH PROPERTIES RENTAL, INC., a Delaware
corporation, LUXURY PROPERTIES TRUST u/a/d
March 2, 2018, AAA PLUS FINANCIAL GROUP
INC., a Florida corporation, YVETTE TENORD, an
individual, JOHNNY PREVILUS, an individual,
RES INVESTMENT INTER, INC., a Florida
corporation, INFINITE RES INVESTMENT, LLC,
a Nevada limited liability company, NEW MIAMI
REALTY, CORP., a Florida corporation, and
GUZMAN305 TRUST, a Florida trust,

    Defendants.
_____/

## PLAINTIFFS' CLOSING ARGUMENT

    Plaintiffs, Patrick Muller and Mouna Bouzid Muller ("Mullers") put their trust in the wrong people to make an investment of their life savings here in Miami. They foolishly trusted Iteb Zaibet to help them with an investment in real estate that they will forever regret. But their poor judgment is not a defense by Johnny Previlus ("Previlus") and his wife, Yvette Tenord ("Tenord") to the Mullers' unjust enrichment action. As stated by opposing counsel in his opening statement, his one and only defense to this matter was the legality of the alleged Bitcoin investment by the

Mullers. If that defense fails, then the only issue remaining is the amount of damage that was proven at trial. For many reasons, the Bitcoin defense does not work, and that defense fails.

## UNJUST ENRICHMENT

The elements of unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff. *Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So.3d 689. 693 (Fla. 3rd DCA 2018)*. Previlus testified that the Mullers deposited almost $1,700,000 into his Wells Fargo account he kept for his company AAA Plus Financial Group, Inc. ("AAA"). He admitted that the 4 wires that came in in early December 2021 through the first week of January 2022, were made by Mr. Muller. Previlus voluntarily accepted these 4 wire transfers from the Mullers, used some of these funds for his benefit, his wife's benefit and for his companies' benefit. Previlus had no relationship with the Mullers, did nothing to benefit them, and learned by January 14, 2022 after phone calls with the Mullers' attorney, that Iteb Zaibet did not have permission to use the Mullers money for anything but an investment in Miami real estate for the Mullers.

The Mullers proved at trial all the elements of unjust enrichment by competent evidence and it would be inequitable to allow Previlus and his wife to keep that benefit without first paying the value they received back to the Mullers. The harsh February 2, 2022, demand letter at Mullers' Exhibit 60, clearly put Previlus and Tenord on notice to stop spending the Mullers money out of the AAA account and that they needed to repay all the funds they took and used for their benefit. Instead, they ignored the demands made by the Mullers' attorneys and spent the remaining money in the AAA account as fast as they could. This included closing on the Port St. Lucie property on

February 11, 2022. They then sold that property for a substantial profit in August of that same year and paid nothing back to the Mullers.

## DISGORGEMENT OF PROFITS

Disgorgement of profits is a subset of unjust enrichment and is intended to deter wrongdoers by making it unprofitable to engage in wrongful behavior. *Bailey v. St. Louis, 268 So.3d 197, 201 (Fla. 2nd DCA 2018)*. Whatever profits Res Investment, Previlus and Tenord made on the sale of the Port St. Lucie property should be included in the judgment against Previlus, Tenord and Res Investment, the company Previlus used to buy the property.

A federal court has also recognized that disgorgement is an equitable remedy that is intended to prevent unjust enrichment. *Securities and Exchange Commission v. Levin, 849 F.3d 995, 1006 (11th Cir. 2017)*. That case also held that a plaintiff need only prove a reasonable approximation of the defendant's ill-gotten gains and then the burden shifts to the defendant to demonstrate the estimate is not reasonable. Id. at 1006. The two closing statements on the Port St. Lucie property clearly show that the sale price was almost $300,000 higher for Previlus from the initial purchase only 7 months later.

A detailed analysis below will disclose to the penny how much profit Previlus and Tenord made on the Port St. Lucie property. Please keep in mind that both Previlus and Tenord testified they individually controlled the cash made on the sale and that they used all the cash for their own benefit. Therefore, the judgment for the Mullers concerning the profits made on the Port St. Lucie property should be against Previlus, Tenord and not just Res Investment.

## BITCOIN

Defendants spent almost their entire case on the defense that the Mullers illegally bought Bitcoin, had unclean hands due to this purchase and therefore are barred from their unjust

3

enrichment claims. As pointed out at the end of the trial by this Court, that defense had many problems and this Court was skeptical that defendants had successfully proven this defense. I will briefly address the reasons why this defense fails. First, defendants never proved that the Mullers ever successfully purchased bitcoin. The testimony was there was an attempt to purchase Bitcoin but no evidence was presented that Bitcoin was ever purchased in the name of the Mullers. Second, the attempted purchase was in America, not in Tunisia. How could Tunisia laws be violated by something that happened in this country? Third, the monies that were used to attempt to buy Bitcoin came from a French bank, not from a Tunisia bank. That issue was never discussed or dealt with by the defendants. Fourth, the evidence defendants are relying on to prove what the Mullers did was illegal did not prove one penny of the money deposited by the Mullers into the Wells Fargo account of AAA were ever to be used for the purchase of Bitcoin. The overwhelming testimony and record evidence was that the Mullers' 4 wire transfers into the AAA account, were earmarked for Miami real estate, not Bitcoin. Finally, what the defendants needed was an expert witness to apply all of the facts listed above, to the law of Tunisia at the time of the attempted purchase and then outline competently, whether or not that evidence would amount to a violation of Tunisia criminal law. That was not done, and the unclean hands defense fails for all the reasons listed above.

**DAMAGES**

The Mullers deposited $1,667,262.75 into the Wells Fargo account in four wire transfers of December 3, 2021, December 14, 2021, December 23, 2021, and January 7, 2022 (Muller Exhibit 2 at bate stamp numbers 91-92, 97). The day before the first wire of December 3, there was only $2,020.54 in the Wells Fargo account. On December 23, 2021, Previlus wired $300,000 out of this Wells Fargo account to the Space Coast Credit Union Account of Res Investment

(Muller Exhibit 2, bate stamp number 92). On January 13, 2022, $195,000 was wired from the Res Investment account back to the Wells Fargo Account, leaving $105,000 of the Muller money still at Res Investment. (See Muller exhibit 2 at bate stamp number 97).

These amounts can also be traced by reviewing Muller Exhibit 5, which are the Res Investment bank records at Space Coast Credit Union. Previlus testified that Res Investment only had one asset in its business history and that was the Port St. Lucie property. He also testified that the Space Coast Credit Union account whose bank statements are found at Muller Exhibit 5, was used to hold the money used to pay for the Port St. Lucie property. Muller Exhibit 5, at bate stamp number 128 shows the $300,000.00 going into the account from the Wells Fargo account on December 23, 2021. Bate stamp number 130 of that exhibit shows the $195,000.00 going back to the Wells Fargo account on January 13, 2022. No other monies were transferred back to the Wells Fargo account by Res Investment.

On February 11, 2022, an additional $48,500 was taken from the Wells Fargo account and placed into the Res Investment account at Space Coast Credit Union. (See Muller Exhibit 2 at bate stamp number 102) Previlus testified that he used that money to help purchase the Port St. Lucie property. On the Space Coast Credit Union statement, it shows $216,000 being wired out on February 11, 2022 (Muller Exhibit 2, bate stamp number 133). The closing statement for the purchase of the Port St. Lucie property is dated February 11, 2022 (Muller Exhibit 52), the same day the wire was sent out of the Res Investment account at Space Coast Credit Union. This is consistent with Previlus's testimony that he used those funds to purchase the property. The $105,000.00 that was in the Res Investment account that was Muller money, plus the $48,500.00 sent from the Wells Fargo account on February 11, 2022, means a total of $153,500 of Muller money was used to purchase the Port St. Lucie Property.

The closing statement of the Port St, Lucie Property dated February 11, 2022, (Muller Exhibit 52) shows that Previlus paid a grand total of $301,123.82 in cash for the property. Previlus should not get credit for the $15,000 realtor credit found on line 204 of the closing statement. Ms. Tenord testified that amount was a waiver of her commission on this real estate transaction. It was not money put into the closing by the defendants but just a waiver of a commission and thus should not be credited to the defendants in the lost profit calculation.

Pursuant to the above calculations, the Mullers had $153,500 of their funds used by Res Investment to purchase the property and Previlus had $147,623.82 of his own money in the transaction. There was also a $1,050,000 mortgage taken out by Res Investment to purchase the property. The closing on this property 7 months later is memorialized in the closing statement at Muller Exhibit 57. At line 420 of that closing statement, the $1,050,000 mortgage is listed at $1,096,810 or $46,810 higher than the original amount. Previlus testified that his mortgage on this property was interest only, but he clearly did not pay any interest because his principal amount is $46,810 higher only 7 months later. The only reason the principal amount of an interest only loan goes up is because the borrower has failed to pay the interest on the loan.

The closing statement for the sale of the Port St. Lucie property at Muller Exhibit 57, discloses that the cash paid to the seller, Res Investment, was $423,242.43. Previlus used $147,623.82 of his own money for the initial purchase of the property and $153,500.00 of Muller money on said purchase. Giving Previlus credit for the cash he used to purchase the property ($423,242.43 - $147,623.82 = $275,618.61) Res Investment made a profit of $275,618.61 on the sale of said property. Both Previlus and Tenord testified at trial they took all the money out of the Res Investment account and spent the money as they saw fit. Therefore, the Mullers should receive a judgment against Previlus, Tenord and Res Investment for $275,618.61, plus interest from

August 26, 2022, the closing date on the property. This calculation deals with ill gotten gains as to the purchase and sale of the Port St. Lucie property only.

Previlus testified he borrowed money from the AAA Wells Fargo account. This loan is memorialized at Muller Exhibit 38. This exhibit is a WhatsApp message between Previlus and Iteb Ziabet dated January 15, 2022. He testified that this message was an accurate recap of the money received into the AAA Wells Fargo account as of January 15, 2022. All the monies into the account at that time were the 4 wires from the Mullers. At bate stamp number 432 of Muller Exhibit 38, Previlus listed a loan he owed Iteb Ziabet as of January 15, 2022. He testified he owed Iteb Zaibet $323,311.79 as of that time, from money he took out of the AAA Wells Fargo account.

If you look at the Wells Fargo account at Muller Exhibit 2, no money was deposited in that account after January 15, until February 8, 2022. $88,053.00 was deposited into that account by Previlus through the end of February 2022. But Previlus spent $82,974.12 of that deposited money on himself, his wife or his companies. He did not give it back to the Mullers or pay back one penny of the "loan" to Iteb Zaibet. Loan is put in quotes on the previous sentence, because the money "loaned" to Previlus out of the AAA, Wells Fargo account, all came from the Mullers, not anyone else. It was their money he took from that account. That loan of $323,311.79 Previlus testified he owed Iteb Ziateb on January 15, 2022, was actually owed to the Mullers since it was their money he took. Previlus did not prove by any competent evidence he ever paid anyone back for any of the "loan" money he took out of the AAA Wells Fargo account after January 15, 2022. This amount is apart from the profits made on the Port St. Lucie property sale (except for the $48,500 sent from the AAA account on February 11 as part of the purchase price on the Port St. Lucie property) making the total loan still outstanding at $274,811.79 ($323,311.79 - $48,500=$274,811.79). This amount is separately owed to the Mullers by Previlus.

7

## CONCLUSION

The Mullers are entitled to a judgment against Previlus, Tenord and Res Investment for the profit on the sale of the Port St. Lucie home in the amount of $275,618.61, plus interest from August 26, 2022, the closing on the property. The Mullers are entitled to an additional sum of $274,811.79 against Previlus as of January 15, 2022, for the outstanding loan amount he admitted owing from the monies taken from the Mullers from the AAA, Wells Fargo account, plus interest from January 15, 2022. The Mullers are also entitled to the costs incurred in this matter.

**TAYLOR, DAY, GRIMM & BOYD**

*/s/ Kenneth A. Tomchin*
John D. Osgathorpe, Esquire
Florida Bar No. 147620
Kenneth A. Tomchin, Esquire
Florida Bar No. 0724955
Taylor R. McMahon
Florida Bar No. 1030874
50 North Laura Street, Suite 3500
Jacksonville, Florida 32202
Telephone:  904-356-0700
Facsimile: 904-356-3224
jdo@taylordaylaw.com
ktomchin@taylordaylaw.com
tmcmahon@taylordaylaw.com
amelton@taylordaylaw.com
lad@taylordaylaw.com
hmaxwell@taylordaylaw.com

*Attorneys for Plaintiffs Patrick Muller and Mouna Bouzid*

**CERTIFICATE OF SERVICE**

 **I HEREBY CERTIFY** that on the 3rd day of February 2025, I electronically filed the foregoing document with the United States District Court for the Southern District of Florida by using the CM/ECF system which will send notification of such filing to all counsel of record registered in the CM/ECF System.

               */s/ Kenneth A. Tomchin*
               Attorney